514 S.E.2d 397

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Clyde J. HEDRICK, Defendant Below, Appellee,**

**Raymond A. Young, Jr., d/b/a City Bonding Company, Appellant.**

No. 25360.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1999.

Decided Feb. 22, 1999.

William J. Ihlenfeld, Ihlenfeld Law Office, Wheeling, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for the Appellee, State of West Virginia.

DAVIS, Justice:

Appellant herein, Raymond A. Young, Jr., d/b/a City Bonding Company [hereinafter "City Bonding"], appeals an order of the Circuit Court of Pendleton County entered in connection with a criminal action against Clyde J. Hedrick [hereinafter "Hedrick"], an appellee herein, remitting only $355,000.00 of $455,000.00 in bail bonds City Bonding posted on behalf of Hedrick. The bonds were forfeited upon Hedrick's failure to appear at a hearing before the circuit court. On appeal to this Court, City Bonding argues that the circuit court abused its discretion by failing to remit the entire $455,000.00 in forfeited bail bonds, because City Bonding endeavored to return Hedrick to the court's jurisdiction, and because Hedrick voluntarily turned himself in and was in custody after being absent

for only thirty-seven days. We conclude that the circuit court did not abuse its discretion by remitting only $355,000.00 of the forfeited bail bonds.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The basic facts underlying this appeal are undisputed by the parties. Appellant City Bonding, acting as surety, posted bail bonds totaling $455,000.00 [1] on behalf of Clyde J. Hedrick, an appellee herein and criminal defendant below,[2] guaranteeing Hedrick's appearance before the Circuit Court of Pendleton County at a hearing that was subsequently scheduled for March 4, 1998. Hedrick failed to appear at the March 4 hearing. Consequently, the Pendleton County Prosecuting Attorney [hereinafter "the State"] moved the circuit court to declare that the bonds posted on behalf of Hedrick be forfeited. The court granted the State's motion. Thereafter, the State moved that it be awarded a $455,000.00 judgment against City Bonding in connection with the forfeited bonds.

A hearing on the State's motion for judgment was held on March 23, 1998. After considering arguments presented by the parties, the circuit court granted the State's motion and entered judgment against City Bonding as requested. During the course of the hearing, City Bonding did not object to a judgment against it but sought "some time before there be any execution on that bond" so that it might locate Hedrick and return

---

1. City Bonding collected fees totaling $45,500.00 in exchange for posting the bonds.

2. On January 16, 1998, Hedrick was arrested and charged with the third degree sexual assault of a minor in violation of W. Va.Code § 61–8B–5(a)(2) (1984) (Repl.Vol.1997). Hedrick was brought before the Magistrate Court of Pendleton County, and bail was set at $5,000 .00. Later that same day, upon further investigation, Hedrick was again arrested and charged with the third degree sexual assault of a minor, also in violation of W. Va.Code § 61–8B–5(a)(2), and with the manufacture of a Schedule I controlled substance in violation of W. Va.Code § 60A–4–401 (1983) (Repl.Vol.1997). The magistrate court subsequently set bail at $150,000.00 for

these two offenses. On January 29, 1998, City Bonding posted bond for Hedrick in the amount of $155,000.00, the total amount set as bail for all of the above-described offenses. On February 10, 1998, Hedrick was arrested a third time and was charged with three counts of first degree sexual assault of a minor in violation of W. Va.Code § 61–8B–3(a)(1)(ii) (1991) (Repl.Vol. 1997). In connection with this arrest, the magistrate court set bail at $300,000.00. City Bonding then posted the $300,000.00 bond on behalf of Hedrick on February 14, 1998. Thereafter, on March 2, 1998, a grand jury indicted Hedrick on eighty-six felony counts involving sexual offenses against minors, and one count of manufacturing a Schedule I controlled substance.

him to the jurisdiction of the court. City Bonding also reported that it was attempting to locate Hedrick and, because the media was present at the hearing, offered to detail its efforts to the court in chambers.[3] In response to City Bonding's request for additional time, the circuit court stated that it might consider a stay of execution only if City Bonding deposited $455,000.00 "in the breast of the Court and placed on an interest-bearing account, with the General Receiver or a good faith showing by the bonding company that that be done[.]" City Bonding responded that it was unable to make such a deposit that day. Consequently, on March 24, 1998, the State caused the circuit clerk to issue a writ of execution against the property of City Bonding in order to collect the judgment.

Due to City Bonding's failure to pay the judgment against it, a second hearing was held on April 7, 1998. At this hearing, counsel for the State explained that he had contacted counsel for City Bonding on an almost daily basis in an attempt to collect the judgment. The State asked that City Bonding be required to disclose certain financial information concerning its ability to satisfy the judgment so that the State could proceed with its collection efforts. Counsel for City Bonding explained that steps were being taken to procure a letter of credit in the amount of $455,000.00. City Bonding also requested ninety days, to begin on April 7, 1998, within which to produce Hedrick and offered to tender a check in the amount of the judgment on the ninety-first day if it was unsuccessful in this endeavor. The circuit court apparently declined to grant City Bonding's request for a ninety-day stay of execution, and ordered City Bonding to produce the financial documents requested by the State

at a future hearing, which was subsequently scheduled for April 13, 1998.

On April 10, 1998, prior to the next scheduled hearing in this matter, Hedrick voluntarily surrendered himself to officials in Miami, Florida.[4]

A third hearing was then held on April 13, 1998, whereat City Bonding disclosed numerous financial records, in partial compliance with the circuit court's previous order. During the hearing, City Bonding made an oral motion to exonerate the judgment against it based upon the fact that Hedrick was in custody in the State of Florida. City Bonding also moved, once again, for a stay of execution on the $455,000.00 in forfeited bonds. The circuit court again ruled that it would grant a stay of execution only if City Boding deposited the amount of the bonds, plus interest, with the circuit clerk or filed with the clerk an irrevocable unconditional letter of credit for that amount. During this hearing, counsel for City Bonding also described City Bonding's efforts to locate Hedrick and return him to court.[5]

Thereafter, on April 16, 1998, City Bonding obtained a letter of credit in the amount of $458,116.50;[6] however, the letter was not received by the circuit clerk until April 23, 1998. The final hearing on this matter was held on May 7, 1998. The purpose of this hearing was to address City Bonding's motion to exonerate its obligation on the forfeited bail bonds. After hearing the arguments of the parties, the circuit court remitted and exonerated all but $100,000.00 of the forfeited bail bonds. The court explained:

The Court believes, as counsel has indicated, that it has the authority to exonerate the bond in full; Mr. Hedrick is here now; or to exonerate a portion of the bond. Everyone here knew, including the bond-

---

3. Ultimately, no such disclosure of City Bonding's efforts to locate Hedrick was made during the hearing of March 23, 1998.

4. Apparently, Hedrick had been in Cancun, Mexico. According to the State, during an airline flight from Cancun to Miami, Hedrick phoned the United States Customs Service and alerted them to his forthcoming arrival and intent to surrender.

5. Before this Court, counsel for City Bonding submits that City Bonding undertook a nationwide computer search; sent its president, Raymond Young, to Florida to personally search for Hedrick; and hired a Florida bonding agency to assist in the search. City Bonding also contends that it expended more than $3,000.00 in connection with its efforts to locate Hedrick.

6. City Bonding complains that the cost of obtaining the letter of credit was $8,000.00.

ing company, that this term of court started with the Grand Jury action on March the 3rd; that arraignment date was the following day; and that trials would be this month, starting next Monday, the 11th of May, with jury selections scheduled for that day. It is fairly obvious at this time that there is a Motion to Continue filed by Mr. Hedrick, and it's fairly obvious that that motion probably should be granted at this late juncture, since this is his first appearance, and it's now the 7th of May and just four days hence his jury selection. So the Court will be considering that motion in that vein here in a few moments.

It is also obvious that the State had to go to considerable expense in returning Mr. Hedrick from the State of Florida, the total of that expense being $2,096.00 in out of pocket expenses by [the Department of Corrections.]

. . . .

And that the Department of Public Safety expended man hours that . . . were calculated based upon the officer's hourly rate[,]

. . . .

[a]nd that was $1,454.58. It's also obvious to the Court that the bonding company played this pretty free and loose as far as Mr. Hedrick is concerned; it would appear that there was a lot of inditia [sic] that should have raised the red flag for the bonding company, that this was an individual that may very well flee; the size of the bond and the numbers of the bond and apparent statements by the agent, all of which would indicate that the bonding company knew or should have known that there was a substantial risk that this individual would not appear as he was supposed to, and of course, those fears came to pass, and he did not appear as he was supposed to.

The Court is aware of the law that Mr. Ours [counsel for City Bonding] has cited, the federal case, and agrees with it in its entirety, that the purpose of a bond is not to enrich the coffers of the state or federal government, but the Court believes that it is there for the purpose of doing just exactly what they agreed to do, is to make certain that that person would appear at the time that they were supposed to appear. His failure to appear is not going to prevent this case from proceeding, but it has obviously delayed it.

And taking all of that into consideration, the . Court believes that a portion of the bond should be exonerated . . . save[ ] for one hundred thousand dollars[.]

City Bonding moved for a thirty-day stay of execution pending appeal to this Court. The circuit court denied the motion until such time as City Bonding deposited $100,-000.00 with the clerk of the circuit court. City Bonding states that, on May 8, 1998, it sent a check in the amount of $100,000.00 to the circuit court. On May 21, 1998, the circuit court entered an order reflecting its rulings of May 7, 1998. It is from that order that City Bonding now appeals.[7]

## II.

## STANDARD OF REVIEW

■ City Bonding raises the issue of whether the circuit court erred by failing to remit the entire amount of the forfeited bail bonds. We have not previously articulated a standard of review for this issue. For the reasons that follow, we conclude that our review of the circuit court's decision on this issue is for an abuse of discretion. Because a circuit court's actions with regard to forfeiture of bail and associated topics such as remission of forfeited bail and exoneration of the obligor of bail are governed by Rule 46 of the West Virginia Rules of Criminal Procedure, we begin our analysis of the appropriate standard of review by examining the relevant portions of that rule, which state:

(e) *Forfeiture* . . . .

(2) Setting Aside.—The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if

---

7. Pursuant to a plea agreement, Hedrick pleaded guilty, on August 17, 1998, to twenty-one counts of third degree sexual assault of a minor, one count of second degree sexual assault of a minor, and one count of manufacturing a Schedule I controlled substance. The remaining sixty-four counts of the indictment against Hedrick were dismissed.

it appears that justice does not require the enforcement of the forfeiture.

. . . .

(4) Remission.—After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision.

(f) *Exoneration.*—When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail, and if the bail be in a form other than a recognizance, the deposit shall be returned to the person who made the same. A surety may be exonerated by a deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody.

■ Subsection (*e*)(4) of Rule 46 utilizes the term "may" in connection with a circuit court's authority to remit previously forfeited bail. The word "may" generally signifies permission and connotes discretion. *See, e.g., Powers v. Union Drilling, Inc.,* 194 W.Va. 782, 786, 461 S.E.2d 844, 848 (1995) (commenting that "[t]he legislators' choice of the term 'may' leaves no doubt that availment" of particular identified procedures delineated in statute being addressed by court "was intended to operate in a discretionary, rather than an obligatory, manner"); *Weimer–Godwin v. Board of Educ. of Upshur County,* 179 W.Va. 423, 427, 369 S.E.2d 726, 730 (1988) (interpreting statutes using word "may" and determining that they grant discretion because "[t]he word 'may' generally should be read as conferring both permission and power"); *Hodge v. Ginsberg,* 172 W.Va. 17, 22, 303 S.E.2d 245, 250 (1983) ("We agree with the respondent that the use of the word 'may' in a statute often indicates discretion.").

In addition, we note that the provisions of Rule 46 of the West Virginia Rules of Criminal Procedure herein addressed are substantially similar to the correlative provisions of Rule 46 of the Federal Rules of Criminal Procedure. Therefore, it is pertinent to note that federal courts have applied an abuse of discretion standard of review when presented with issues involving the remission of bail.

*See United States v. Gambino,* 17 F.3d 572, 574 (2d Cir.1994) (stating in connection with discussion of remission issue raised by the appellant that "[w]e will not reverse the court absent an abuse of discretion" (citation omitted)); *United States v. Diaz,* 811 F.2d 1412, 1415 (11th Cir.1987) (explaining that a trial judge's decision regarding remission "may only be overturned upon a finding of arbitrary and capricious abuse of discretion" (citation omitted)); *United States v. Abernathy,* 757 F.2d 1012, 1015 (9th Cir.1985) ("In reviewing the district court's decisions with respect to [the issues of bond forfeiture and remission] this court should apply an abuse of discretion standard." (citations omitted)); *United States v. Skipper,* 633 F.2d 1177, 1180 (5th Cir.1981) ("In our opinion, the district court did not abuse its discretion in denying remission."); *United States v. Vader,* 630 F.2d 792, 794 (1980) (recognizing that "a trial court has the discretionary power to set aside a forfeiture order, or remit it, in whole or in part[,]" and finding "no abuse of discretion on the part of the trial court"); *United States v. Mizani,* 605 F.2d 739, 740 (4th Cir.1979) ("The sole issue presented for our review is whether the district court abused its discretion in refusing to remit any part of the forfeited bond."); *Larson v. United States,* 296 F.2d 167, 169 (1961) (interpreting older version of Rule 46 of the Federal Rules of Criminal Procedure, the relevant provisions of which are identical to the current West Virginia rule, and observing that "[i]t is only where there has been an abuse of discretion that an appellate court may set aside the action of the District Court denying the remission of a forfeiture").

■ For the foregoing reasons, we hold that a trial court's decision on whether to remit, under Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, a previously forfeited bail bond will be reviewed by this Court under an abuse of discretion standard. In considering this issue, we will not substitute our discretion for that of the trial court; rather, we will reverse only upon finding that the trial court abused its discretion. *See Bartles v. Hinkle,* 196 W.Va. 381, 389–90, 472 S.E.2d 827, 835–36 (1996) ("the question is not whether we would have imposed a more

lenient penalty had we been the trial court, but whether the trial court abused its discretion in imposing the sanction" (citation omitted)).

■ In this regard, we have previously explained that "[a] trial court abuses its discretion if its ruling is based on an erroneous assessment of the evidence or the law." *Id.* at 389, 472 S.E.2d at 835 (citation omitted). *See also Gribben v. Kirk,* 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995) ("Under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances."); *Gentry v. Mangum,* 195 W.Va. 512, 520 n. 6, 466 S.E.2d 171, 179 n. 6 (1995) ("In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them.").

■ We have also cautioned, however, that we will not simply rubber stamp the trial court's decision when reviewing for an abuse of discretion. *See, e.g., Bartles* at 390, 472 S.E.2d at 836 ("[The fact that we review for an abuse of discretion] does not mean, however, that we will rubber stamp the sanction decisions of a trial court. Both Rule 16(f) and 37(b) of the Rules of Civil Procedure allow the imposition of only those sanctions that are 'just.' " (citations omitted)). A trial court is instructed by Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure that, in determining whether to remit all or part of a forfeited bail bond, it is to employ "the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision." Looking to W. Va. R.Crim. P. 46(e)(2), it is clear that a trial court may remit all or part of a forfeited bail bond "if it appears that justice does not require the enforcement of the forfeiture." Therefore, in determining whether the lower court in this case abused its discretion in refusing to remit $100,000.00 of the forfeited bail bonds, we

must consider whether justice required the enforcement of some part of the forfeiture.

■ Finally, we hold that the surety bears the burden of establishing that the trial court abused its discretion in refusing to remit, pursuant to Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, all or part of a previously forfeited bail bond. *See United States v. Felix–Meza,* 825 F.2d 1334, 1336 (9th Cir.1987) ("The surety bears the burden of proving an abuse." (citation omitted)); *United States v. Frias–Ramirez,* 670 F.2d 849, 852 (9th Cir.1982) (same (citing *United States v. Nolan,* 564 F.2d 376, 378 (10th Cir.1977); *United States v. Foster,* 417 F.2d 1254, 1256–57 (7th Cir.1969))). With due consideration for the principles set forth in this section of the opinion, we proceed to consider the parties' substantive arguments.

### III.

### DISCUSSION

City Bonding argues that the Circuit Court of Pendleton County abused its discretion by withholding any portion of the $455,000.00 in bail bonds, because the object of bail "is not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty[,]" of criminal activity. Furthermore, City Bonding submits that Hedrick turned himself in after only thirty-seven days and thereby "repair[ed]" the default" caused by his flight within the same term of court as his indictment. Thus, there was no real injury to the State caused by Hedrick's disappearance, especially when considering the fact that he later entered a plea of guilty.[8] City Bonding also argues that the diligent search for Hedrick it conducted at its own expense should preclude any penalty.

Finally, City Bonding notes that in the Fourth Circuit, the United States Court of Appeals requires a trial court to consider the following factors in exercising its discretion with regard to remission of a forfeited bail bond: (1) expenses incurred by the government; (2) the appropriateness of the amount

---

8. *See supra* note 7.

**554**

of the bond; (3) the willfulness of the defendant's breach of the bond's conditions; (4) the participation of the bondsman in the re-arresting of the defendant; and (5) the prejudice suffered by the government. *United States v. Mizani*, 605 F.2d 739 (4th Cir.1979).

The State responds that the circuit court merely exercised, and did not abuse, its discretion in deciding to remit only a portion of the forfeited bail bonds. In response to City Bonding's assertion that no harm was done since Hedrick was returned to West Virginia and ultimately pleaded guilty, the State contends that while it suffered no irreparable harm, it nonetheless sustained serious harm. The State submits that investigative and prosecutorial resources were diverted, and the court's docket was disrupted by Hedrick's absence. Moreover, the victims of Hedrick's crimes were "left in limbo, not knowing when or if justice would be served."

This Court has never before addressed the issue of whether or not a trial court has abused its discretion in deciding whether to remit forfeited bail under Rule 46 of the West Virginia Rules of Criminal Procedure.[9] Consequently, because the relevant provisions of W. Va. R.Crim. P 46 are substantially the same as Rule 46 of the Federal Rules, we look to the federal courts for guidance.

The United States Court of Appeals for the Fourth Circuit has addressed this issue on a few occasions. In *United States v. Mizani*, 605 F.2d 739, the court set forth specific criteria to be considered in determining whether a trial court has abused its discretion in connection with its decision on a motion for remission. The *Mizani* court explained:

> In appraising the action of the district court, two of the factors to be considered are the expenses incurred by the Government and the appropriateness of the amount of the bond. *United States v.. Kirkman*, 426 F.2d 747 (4th Cir.1970). Other pertinent factors include the willfulness of the defendant's breach of the bond's conditions, the participation of the bondsman in rearresting the defendant,

and the prejudice suffered by the Government. *See United States v. Nell*, 515 F.2d 1351, 1353 (D.C.Cir.1975).

*Mizani* at 740. The *Mizani* court found that the district court did not abuse its discretion by declining to remit any portion of a $100,000.00 bond that was forfeited when the defendant, an Iranian national who was legally in the United States on a temporary basis, fled after being convicted of drug trafficking. Ultimately, the defendant was apprehended in Germany and extradited to the United States. The surety on the bond was the defendant's brother, a naturalized citizen. In making its determination that there was no abuse of discretion, the court of appeals observed that the district court warned the defendant's brother that he was taking a substantial risk, that the defendant's brother failed to supervise the defendant while he was free on bond, that the defendant's breach of the conditions of his bond was willful and aggravated, and that the defendant's brother did nothing to assist the Government in locating the defendant in Germany or securing his return to the United States.

In a case that followed *Mizani*, the United States Court of Appeals for the Fourth Circuit again concluded that the district court did not abuse its discretion. *Accredited Sur. & Cas. Co. v. United States*, 723 F.2d 368 (4th Cir.1983). In *Accredited*, the district court declined to remit $25,000.00 of a $75,000.00 bond that was forfeited after the defendant failed to appear at a preliminary hearing on charges of illegal importation of marijuana. The court observed that

> " [t]wo competing principles control remission. First, a forfeiture should bear some reasonable relation to the cost and inconvenience to the government and the courts. *United States v. Kirkman*, 426 F.2d 747, 752 (4th Cir.1970). Second, if a violation of a condition of release is more than technical, the court may require a substantial forfeiture to deter not only the defendant but others from future violations.' *See,*

**9.** However, this issue was addressed by this Court in *State v. Arrington*, 147 W.Va. 753, 131 S.E.2d 382 (1963), a case that was decided prior

to the adoption of the West Virginia Rules of Criminal Procedure. See *infra* note 10 for further comments on *State v. Arrington.*

*e.g., United States v. Agueci,* 379 F.2d 277, 278 (2d Cir.1967)[.]"

*Id.* at 369–70 (quoting *Jeffers v. United States,* 588 F.2d 425 (4th Cir.1978)). In concluding that there was no abuse of discretion, the *Accredited* court noted that the government had expended $7,500.00 in recovering the defendant and returning him to the court's jurisdiction, and that the defendant's flight was "not a mere 'technical' violation of the conditions of release." *Id.* at 370.

Other circuits of the United States Court of Appeals have reached similar conclusions. The Second Circuit has determined that, in evaluating a remission motion, the trial court must consider

" 'whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; . . . any explanation or mitigating factors presented by the defendant; . . . whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family." '

*United States v. Gambino,* 17 F.3d 572, 574 (2d Cir.1994) (quoting *United States v. Carvajal,* 674 F.Supp. 973, 974 (E.D.N.Y.1987), and omitting citations provided in that case). After observing the previously established criteria, the *Gambino* court then added an additional factor: "the deterrence value of total forfeiture." *Id.* at 575. The appellate court then found that the trial court properly exercised its discretion when it refused to remit any portion of a $2,000,000.00 bond after the defendant, who had been arrested and charged with narcotics and racketeering violations, fled justice and was re-arrested in Florida seventeen days later after an extensive international manhunt.

The Eleventh Circuit, in *United States v. Diaz,* was asked to determine whether the district court abused its discretion by denying a motion to remit a $300,000.00 bond. 811 F.2d 1412 (11th Cir.1987). The bond was secured by residences owned by the defendant's wife and parents. The defendant, who had been indicted on charges of tax evasion, perjury and attempted bribery of grand jury witnesses, failed to make a scheduled court appearance after he was allegedly kidnapped. The kidnappers never contacted the defendant's family, and his whereabouts after the alleged kidnapping were never discovered. In reaching its conclusion that there was no abuse of discretion by the district court, the Court of Appeals explained:

The general method of [establishing that justice necessitates remission] is to show that the bond forfeiture bears no reasonable relation to several factors:

1) the cost and inconvenience to the government in regaining custody of the defendant,

2) the amount of delay caused by the defendant's default and the stage of the proceedings at the time of his disappearance,

3) the willfulness of the defendant's breach of conditions and the prejudice suffered by the government, and

4) the public interest and necessity of effectuating the appearance of the defendant.

*Diaz* at 1415 (citing *United States v. Parr,* 594 F.2d 440, 444 (5th Cir.1979)). Finally, the *Diaz* court noted that "[c]ourts have refused to specifically emphasize any of these factors. Furthermore, although these factors are mentioned most often, they are not the only factors that may be relevant." *Id.* n. 2 (citing *United States v. Nell,* 515 F.2d 1351, 1353 (D.C.Cir.1975)).

Similarly, the Ninth Circuit has

enumerated four factors a district court may consider when making its decision of whether to enforce forfeiture:

1. the bailee's willfulness in breaching release conditions;

2. the surety's participation in apprehending the bailee . . . ;

3. the cost, inconvenience, and prejudice suffered by the government as a result of the bailee's breach; and

4. mitigating factors or explanations offered by the bailee.

However, not all of these factors need be resolved in the government's favor for the district court to enforce full forfeiture. *See* [*United States v.* ]*Stanley,* 601 F.2d [380,]

382 [ (9th Cir.1979) ] (no showing of costs or prejudice to government).

*United States v. Abernathy*, 757 F.2d 1012, 1015 (9th Cir.1985) (citing *United States v. Castaldo*, 667 F.2d 20 (9th Cir.1981), as authority for the listed factors). In *Abernathy*, two brothers were indicted in Tucson, Arizona, on fifteen counts of mail fraud. Bail was fixed at $100,000.00. The brothers were subsequently arrested in Utah. A Utah magistrate released them on $25,000.00 bonds following bond reduction hearings. In connection with the bonds, the magistrate imposed conditions of release that included, *inter alia*, the requirement that the brothers appear before the district court in Tucson on October 3, 1983. The brothers breached this condition of their bond and the district court declared forfeiture of the Utah bonds. On January 13, 1984, just over three months after their breach, the brothers were rearrested. Thereafter, the district court denied the brothers' joint motion to set aside the bond forfeiture. On appeal, the government did not specify the expenses it incurred as a result of the brothers' flight from justice. Nevertheless, the Court of Appeals found no abuse of discretion. The court based its decision on the willfulness of the defendant brothers' failure to report, the apparent cost and inconvenience to the government that resulted from a protracted search for and reapprehension of the brothers and the absence of mitigating factors.

The District of Columbia Circuit also has addressed this issue. *See United States v. Nell*, 515 F.2d 1351 (D.C.Cir.1975). In *Nell*, the defendant was arrested and charged with carrying a dangerous weapon, possession of a controlled substance with the intent to distribute, and possession of controlled substances. He was subsequently released after posting a $10,000.00 surety bond. Trial was scheduled for July 17, 1974. Upon the defendant's failure to appear for trial, the judge declared forfeiture of the $10,000.00 bond. Shortly thereafter, on July 24, 1974, the defendant was reapprehended and pleaded guilty to one count of narcotics possession with the intent to distribute. The surety on the bond then filed a motion to set aside the bond forfeiture. At a subsequent hearing, the surety sought a full evidentiary hearing.

The trial court denied the motion to set aside the forfeiture and declined to conduct an evidentiary hearing. The surety appealed. The United States Court of Appeals concluded that the trial court erred in refusing the surety's request for an evidentiary hearing. However, the court recognized the trial court's discretionary power to decide issues of forfeiture and stated:

> Relevant to the exercise of that discretion are factors such as the willfulness of the defendant's breach of bond conditions, the participation of the bondsman in rearresting the defendant, and the prejudice suffered by the government by the breach of the bond conditions.
>
> It is not our role to prescribe the precise weight to be given to these various factors. Nor do we imply that the factors noted above are the only ones that may be relevant.

*Nell* at 1353 (footnotes omitted).

██ Having reviewed the cases discussed above, we find it prudent to similarly set forth some relevant criteria to be considered by the trial courts of this State when contemplating the remission of forfeited bail. Consequently, we hold that when a trial court is asked to remit all or part of a previously forfeited bail bond, pursuant to Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, the court shall consider the following criteria to the extent that they are relevant to the particular case under consideration: (1) the willfulness of the defendant's breach of the bond's conditions; (2) the cost, inconvenience and prejudice suffered by the government as a result of the breach; (3) the amount of delay caused by the defendant's default and the stage of the proceedings at the time of his or her disappearance; (4) the appropriateness of the amount of the bond; (5) the participation of the bondsman in rearresting the defendant; (6) whether the surety is a professional or a friend or member of the defendant's family; (7) the public interest and necessity of effectuating the appearance of the defendant; and (8) any explanation or mitigating factors presented by the defendant. These factors are intended as a guide and do not represent an exhaustive list of all

of the factors that may be relevant in a particular case. All of the factors need not be resolved in the State's favor for the trial court to deny remission in full or in part. Moreover, it is for the trial court to determine the weight to be given to each of these various factors.[10]

 Applying these factors to the well-reasoned decision of the circuit court in this case, we find no abuse of discretion. With regard to the first factor, it is undisputed that Hedrick willfully breached the conditions of his bonds. " '[I]f a violation of a condition of release is more than technical, the court may require a substantial forfeiture to deter not only the defendant but others from future violations.' *See, e.g., United States v. Agueci,* 379 F.2d 277, 278 (2d Cir. 1967)[.]" *Accredited Sur. & Cas. Co. v. United States,* 723 F.2d 368, 370 (quoting *Jeffers v. United States,* 588 F.2d 425, 427).

 Next, we note that the State expended approximately $3,551.00 to locate Hedrick and return him to the jurisdiction of the circuit court, which amount is considerably less than the portion of the bonds the court declined to remit in this case. We recognize that the purpose of bail is not to enrich the state treasury. "Forfeitures are not properly ordered for the purpose of enriching the government or to punish a defendant." *United States v. Kirkman,* 426 F.2d 747, 752 (4th Cir.1970) (footnote omitted) (citing *Paris v. United States,* 137 F.2d 300 (4th Cir.1943); *United States v. Nebbia,* 357 F.2d 303 (2d Cir.1966); *Smith v. United States,* 357 F.2d 486 (5th Cir.1966); *United States v. D'Argento,* 339 F.2d 925 (7th Cir.1964)). However, the State's expenses are only one of many factors to be considered. Another factor is the inconvenience to the government and the courts. " '[F]orfeiture should bear some reasonable relation to the cost *and inconvenience* to the government and the courts.' " *Accredited,* 723 F.2d at 369–70 (emphasis added) (quoting *Jeffers,* 588 F.2d at 427 (cit-

ing *United States v. Kirkman,* 426 F.2d at 752)). Although Hedrick's whereabouts were unknown for a period of only thirty-seven days, and he was returned to the jurisdiction of the trial court within the same term of court as his indictment was rendered, nevertheless, the trial court's docket was disrupted, and it was apparently necessary to continue Hedrick's case until the next term of court. In addition, other state personnel were diverted from their normal duties to search for Hedrick, and Hedrick's case consumed the attention of the prosecutor's office for a longer period than otherwise would have been necessary. Finally, we note that there were numerous time-consuming attempts made to collect the judgment on the forfeited bonds in this case, and multiple hearings were held on that issue, which efforts would not have been necessary had Hedrick complied with the conditions of his bonds and properly appeared before the court.

With regard to the appropriateness of the amount of the bonds, City Bonding does not dispute that the amount was appropriate. Furthermore, it was represented to the lower court that City Bonding was warned that there was a substantial degree of risk that Hedrick would flee, and this fact also was evidenced by the sizeable amount of bail required.

 City Bonding has based a substantial part of its argument for full remission on the fifth factor: the fact that it exerted its own time and money in an effort to find and return Hedrick. While City Bonding's efforts are a factor to be considered, such efforts alone are insufficient to justify full remission. The purpose of the bonds were to assure Hedrick's appearance before the court. *See, e.g., United States v. Diaz,* 811 F.2d 1412, 1415 (11th Cir.1987) ("The purpose of bond is to secure the presence of the defendant to answer any charge or charges against him, and to respond to the judgment

---

10. In Syllabus point 3 of *State v. Arrington,* 147 W.Va. 753, 131 S.E.2d 382 (1963), we held:

 As a general rule, upon default of the principal in a recognizance conditioned upon his appearance before a court, the surety will be excused from liability on such recognizance

only where the default of the principal is caused by the public enemy, the obligee, the law or an act of God.

 To the extent that this syllabus point may be interpreted inconsistently with our present holding, it is expressly overruled.

of the court[.]"); *United States v. Kirkman*, 426 F.2d at 752 ("The purpose of bail is to secure the presence of the defendant at trial."). The bond documents, which were signed by a representative of City Bonding, clearly expressed this purpose.[11] Because City Bonding failed in its duty to see that Hedrick appeared before the court, the bonds were necessarily forfeited.[12] The fact that City Bonding made unsuccessful efforts to locate Hedrick does not fulfill its duty such that it should be entitled to full remission of the forfeited bonds. To find otherwise would be to diminish the duty of a bonding company or other surety to act diligently to assure that its bailees conform to the conditions of their bonds in order to avoid forfeiture. Furthermore, the surety on Hedrick's bonds was a professional bonding company, with experience and knowledge of its rights and duties, and not a private individual, friend or family member.

With regard to the seventh factor, we believe the nature of the crimes for which Hedrick had been indicted created an ardent public interest in and necessity of effectuating his appearance. Where a defendant has been indicted on such non-violent crimes as uttering or forgery, the public interest in effectuating his or her appearance may not be as strong. Here, however, Hedrick had been indicted on eighty-six felony counts involving heinous offenses against minors. Finally, with regard to the last criteria, we note that no mitigating factors have been presented by Hedrick or City Bonding.

As we explained above, City Bonding bears the burden of establishing that the circuit court abused its discretion. It has failed to do so. Based upon the foregoing, we cannot conclude that justice required remitting the entire amount of the bonds in this case. Thus, we find no abuse of discretion.

## IV

## CONCLUSION

For the reasons explained in the body of this opinion, we find that the Circuit Court of Pendleton County properly exercised its discretion when it declined to remit $100,000.00 of $455,000.00 in bail bonds that had been forfeited due to Hedrick's failure to appear before the court. Consequently, the order of the Circuit Court of Pendleton County, entered on May 21, 1998, is affirmed.

Affirmed.

---

11. The bond documents stated:
 NOW, THEREFORE, if the said Clyde J. Hedrick shall make his personal appearance before the Court at the time notified ..., then and there to answer for the offense with which he is charged, and to any indictment concerning any such offense that may be thereafter returned, and then and there render himself amendable to the order and process of said Court, and from term to term and time to time thereafter to which the proceedings concerning said charge or indictment may be continued, until the matter is finally terminated, and if convicted shall appear for judgment and render himself in execution thereof upon such day as the court may order, and shall thence not depart without leave of the Court, then this recognizance to be void, else remain in full force and effect.

12. See W. Va. R.Crim. P. 46(e)(1): "(e) Forfeiture.—(1) Declaration.—If there is a breach of condition of a bond, the circuit court *shall* declare a forfeiture of the bail." (Emphasis added).