# STATE OF WEST VIRGINA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent,**

**v.) No. 23-398** (Webster County Case No. CC-51-2022-F-47)

**Larry Glenn Wooten,**
**Defendant Below.**

**FILED**

**November 7, 2025**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# MEMORANDUM DECISION

Petitioner, A-Four-Dable Bonding, L.L.C. ("the petitioner"), appeals from the May 30, 2023, Order of the Circuit Court of Webster County, West Virginia, directing that a portion of a $10,000 bond the petitioner had earlier posted for Larry Glenn Wooten ("Mr. Wooten"), defendant in the criminal proceedings below, be forfeited.[1] The petitioner argues that because it was not given timely notice of Mr. Wooten's failure to appear at a pretrial hearing as required by West Virginia Code section 51-10-5a(d) (2025),[2] the circuit court erred as a matter of law in ordering forfeiture; or alternatively, that the court abused its discretion in ordering forfeiture because it failed to properly analyze the factors set forth in syllabus point three of *State v. Hedrick*, 204 W. Va. 547, 514 S.E.2d 397 (1999).[3]

After careful review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we determine that a memorandum decision reversing the judgment of the circuit court is appropriate under the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

---

[1] The petitioner is represented by counsel Steven B. Nanners, and the respondent State of West Virginia is represented by John B. McCuskey, Attorney General, and William E. Longwell, Assistant Attorney General.

[2] The statute provides that "[w]hen a bond is to be forfeited, the court is to give notification to the bail bondsman *within twenty-four hours of the failure to appeal*." W. Va. Code § 51-10-5a(d) (emphasis added).

[3] *See infra*.

On March 1, 2022, following Mr. Wooten's arrest on a charge of failure to provide accurate information, second or subsequent offense,[4] the petitioner posted a $10,000 bond to secure his appearance in court. Thereafter, on September 7, 2022, Mr. Wooten was indicted on one count of failure to register as a sex offender, second or subsequent offense,[5] and the circuit court ordered him to be "released upon the bond heretofore given."

A pretrial hearing was scheduled for Thursday, December 1, 2022, and on November 30, 2022, Mr. Wooten's counsel filed a "Motion to Attend Hearing Telephonically" stating that his client did not have transportation from Clarksburg, West Virginia, where he was living with his sister, to Webster Springs, West Virginia, where the courthouse is located. The court denied the motion and rescheduled the hearing for 10:00 a.m. the following day. On Friday, December 2, 2022, Mr. Wooten again failed to appear[6] and at approximately 2:00 p.m. the court issued a bench warrant for his arrest, ordered the State to give notice to the petitioner as required by West Virginia Code section 51-10-5a(d), and set a hearing on December 16, 2022, for the petitioner to "show cause why the bond should not be forfeited." In compliance with the court's order, the State did send both voicemail and electronic notice of the show cause order to the petitioner – but not until approximately 10:00 a.m. on Monday, December 5, 2022.

It is uncontested that as soon as the petitioner received the notice its owner/operator, Jonathon Haskin, contacted the company's agent with instructions to secure a bail piece and apprehend Mr. Wooten; however, shortly thereafter Mr. Haskin learned that Mr. Wooten had already voluntarily turned himself in to the Harrison County Sheriff's Department that morning and thus there was nothing left to be done. The petitioner immediately filed a response to the show cause order, arguing that it had not been notified within twenty-four hours of Mr. Wooten's failure to appear, *see supra* note 2, and that the lack of timely notice deprived it of an opportunity to locate Mr. Wooten and place him in custody, which in turn would have required that the bond forfeiture be exonerated in its entirety. *See* W. Va. Code § 62-1C-12(b) (2020).[7] The petitioner further argued

---

[4] *See* W. Va. Code § 15-12-8(b) (2024)

[5] *See id*. § 15-12-8(c) (2024).

[6] The record does not disclose why Mr. Wooten failed to appear on Friday, December 2, 2022, but it may reasonably be inferred that lack of transportation was again the reason given for his non-appearance based on statements made at the final hearing held on May 1, 2023. Additionally, the fact that Mr. Wooten turned himself in to the Harrison County Sheriff's Department on December 5, 2022, would seem to indicate that he still did not have a way to get to Webster County.

[7] West Virginia Code section 62-1C-12(b) provides that

> [n]otwithstanding any provision of this code to the contrary, when a bail bondsman, as defined in article ten, chapter fifty-one of this code, has a surety bond forfeited because of the failure of a defendant to appear before a court or magistrate, that bail bondsman shall be reimbursed the full amount of the bond forfeiture, be it cash or surety, if the bail bondsman returns the defendant to the custody

2

that the State was not harmed, financially or otherwise, by Mr. Wooten's failure to appear on Friday, December 2, 2022, because he voluntarily turned himself in on Monday, December 5, 2022, less than three days later.

Following briefing and an evidentiary hearing held on May 1, 2023, the circuit court denied the petitioner's motion and ordered the petitioner to pay $1,000 to the Webster County Circuit Clerk.[8] In its written order entered on May 30, 2023, the court found that Mr. Wooten had been given a day in which to get to court after failing to appear for the hearing initially set for December 1, 2022; that the State was harmed in that Mr. Wooten's failure to appear delayed resolution of the case; that it was in the public interest to see that defendants appear in court when scheduled; and that there were no mitigating factors. *See supra* note 6. This appeal followed.

"A trial court's decision on whether to remit, under Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, a previously forfeited bail bond will be reviewed by this Court under an abuse of discretion standard." *Hedrick*, 204 W. Va. at 548, 514 S.E.2d at 398, Syl. Pt. 1. Further, this Court has held that "[t]he surety bears the burden of establishing that the trial court abused its discretion in refusing to remit, pursuant to Rule 46(e)(4) . . . all or part of a previously forfeited bail bond. *Id.*, 204 W. Va. at 548, 514 S.E.2d at 398, Syl. Pt. 2, in part.

As set forth *supra*, West Virginia Code section 51-10-5a(d) requires a court to notify the bonding company within twenty-four hours of a defendant's failure to appear. In the instant case, it is undisputed that approximately sixty-eight hours elapsed between 2:00 p.m. on December 2, 2022, when the circuit court issued a bench warrant and a show cause order, and 10:00 a.m. on December 5, 2022, when the petitioner was notified of Mr. Wooten's failure to appear. Nonetheless, the court agreed with the State's argument that notification to the petitioner was timely pursuant to West Virginia Code section 2-2-1(d) (2022), which provides in relevant part that

> [i]n computing any period of time prescribed by any applicable provision of this code . . . the day of the act, event, default or omission from which the applicable period begins to run is not included. The last day of the period so computed is included, unless it is a Saturday, a Sunday, a legal holiday or a designated day off in which event the prescribed period of time runs until the end of the next day that is not a Saturday, Sunday, legal holiday or designated day off.

On appeal, the petitioner argues that the statutory mandate is clear and unambiguous and evidences obvious legislative intent, specifically, that time is of the essence in notifying the bail bondsman when a defendant fails to appear for scheduled proceedings in court because the sooner the bondsman can begin his or her search, the better the chance of apprehension. Thus, application of West Virginia Code section 2-2-1(d) to the twenty-four-hour notice requirement of West Virginia Code section 51-10-5a(d) can lead to an absurd result where, as here, a defendant's failure to appear

---

of the court or magistrate, within two years of the forfeiture of the bond.

[8] The language in the circuit court's order is somewhat misleading; inasmuch as the bond in this case was $10,000, the court actually granted partial relief to the petitioner by not ordering forfeiture of the entire amount of the bond. The only issue in this case is whether the court erred or abused its discretion in forfeiting $1,000 of the bond.

occurs on a Friday: a defendant may have the benefit of more than two extra days to abscond before the bondsman even knows what has happened. In this regard, this Court has held that

> [i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syl. Pt. 10, in part, *State ex rel. Morrisey v. Diocese of Wheeling-Charleston*, 244 W. Va. 92, 851 S.E.2d 755 (2020):

Although we acknowledge the force of the petitioner's argument, under the facts and circumstances of this case we find it unnecessary to establish any bright-line rules governing the interplay of the two statutes at issue because this Court has already established a test to guide a circuit court's decision to forfeit all or part of a defendant's bond. In syllabus point three of *Hedrick*, 204 W. Va. at 548-49, 513 S.E.2d at 398-99, we held that

> [w]hen a trial court is asked to remit all or part of a previously forfeited bail bond, pursuant to Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, the court shall consider the following criteria to the extent that they are relevant to the particular case under consideration: (1) the willfulness of the defendant's breach of the bond's conditions; (2) the cost, inconvenience and prejudice suffered by the government as a result of the breach; (3) the amount of delay caused by the defendant's default and the stage of the proceedings at the time of his or her disappearance; (4) the appropriateness of the amount of the bond; (5) the participation of the bondsman in rearresting the defendant; (6) whether the surety is a professional or a friend or member of the defendant's family; (7) the public interest and necessity of effectuating the appearance of the defendant; and (8) any explanation or mitigating factors presented by the defendant. These factors are intended as a guide and do not represent an exhaustive list of all of the factors that may be relevant in a particular case. All of the factors need not be resolved in the State's favor for the trial court to deny remission in full or in part.

We have recognized that "[w]ithout question, the circuit court has extraordinarily broad latitude in assessing the *Hedrick* factors and their effect on an impending forfeiture." *Page v. State*, No. 15-0409, 2016 WL 3141572, at *4 (W. Va. June 3, 2016) (memorandum decision). Thus, we review the circuit court's findings of fact and conclusions of law in this case to determine whether the court abused its discretion in ordering the forfeiture.

The circuit court found that Mr. Wooten, whose pretrial conference had originally been scheduled for Thursday, was given an extra day to appear but failed to do so. We agree that this factor weighs against the petitioner in a *Hedrick* analysis. *See* 204 W. Va. at 548-49, 513 S.E.2d at 398-99, Syl. Pt. 3, in part.

4

The circuit court next found that the State was prejudiced by the delay, which is difficult to square with the undisputed facts of this case. First, the delay was minimal: Mr. Wooten failed to appear for a pretrial conference on Friday morning but turned himself in on Monday morning, approximately sixty-eight hours after the court had issued a bench warrant. Further, because Mr. Wooten turned himself in, no State or county resources were required to be expended in his apprehension. Finally, Mr. Wooten ultimately entered a guilty plea and was sentenced thereon, and thus justice was served in his case notwithstanding the delay of one weekend.

The circuit court further found that it is in the public interest for defendants to appear in court when scheduled. This proposition states the obvious – indeed, the proposition can fairly be termed axiomatic – and thus its recitation adds nothing of substance to the balancing test established in *Hedrick*. *See id.*

Finally, the circuit court found that Mr. Wooten's claim that he had no transportation to the courthouse was not a mitigating factor, a conclusion which is questionable, at best. West Virginia is a rural state with little public transportation, and getting to the courthouse is a major problem for many litigants. Further, when Mr. Wooten couldn't find a ride from Clarksburg to Webster Springs for the pretrial conference he sought to appear by telephone, a request which the court denied. When he learned of the existence of the bench warrant, he promptly turned himself in to the Harrison County Sheriff's Department – still unable, it appears, to find a ride to Webster Springs. Under these circumstances, we cannot agree that Mr. Wooten's failure to appear was "willful" within the meaning of *Hedrick*.

We come now to a significant factor that the circuit court failed to consider in its *Hedrick* analysis: the fact that the petitioner did not receive notice of Mr. Wooten's failure to appear within twenty-four hours, which deprived the bonding company of any opportunity to "return[] the defendant to the custody of the court or magistrate" and thus ensure exoneration of any bond forfeiture in its entirety. *See* W. Va. Code § 62-1C-12(b).[9] In our view, this factor decisively tips the balance away from forfeiture under the facts and circumstances of this case, given the limited *Hedrick* factors cited by the court in support of forfeiture and the relative weakness of those factors as discussed *supra*.

Mindful of the limited scope of our review, we nonetheless conclude that the circuit court's forfeiture order must be reversed. We have held that "[o]nly where we are left with a firm conviction that an error has been committed may we legitimately overturn a lower court's discretionary ruling[,]" *Bing v. Lumber & Things, Inc.*, No. 18-0691, 2019 WL 4257089, at *2 (W. Va. Sept. 9, 2019) (memorandum decision) (citing *Caruso v. Pearce*, 223 W. Va. 544, 547, 678 S.E.2d 50, 53 (2009)), and in this case the Court is left with just such a firm conviction.

For the foregoing reasons, we reverse the May 30, 2023, order of the Circuit Court of Webster County forfeiting $1,000 of the petitioner's bond and remand this case for the court to issue an order remitting the forfeited funds pursuant to Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure.

Reversed and Remanded.

---

[9] *See supra* note 2 (setting forth statutory language).

**ISSUED:** November 7, 2025


**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Charles S. Trump IV
Senior Status Justice John A. Hutchison


**DISSENTING:**

Justice C. Haley Bunn
Justice Thomas H. Ewing


Ewing, Justice, dissenting, joined by Bunn, Justice:

      After the defendant Larry Glenn Wooten twice failed to appear for his pretrial hearing,[1] the circuit court forfeited the $10,000 bail bond posted by the petitioner professional bonding company.  The petitioner argued below that the forfeiture proceeding should be dismissed because it was not provided twenty-four hours' notice "of there being any problem with the [d]efendant's failure to appear," citing West Virginia Code § 51-10-5a(d) (providing that "[w]hen a bond is to be forfeited, the court is to give notification to the bail bondsman within twenty-four hours of the failure to appear").  The court denied the petitioner's motion to dismiss but, following a hearing, ultimately remitted $9,000 of the forfeited bond.  Now, viewing the lack of twenty-four hours' notice and the supposed associated deprivation of the ability to "ensure exoneration" of a forfeited bond as "decisive[]," the majority concludes that the court abused its discretion in failing to remit the entire forfeited bond.  I disagree that the court abused its discretion, and I believe that the majority reached that erroneous holding by, first, failing to acknowledge the purpose of bail or to grapple with authority related to bond forfeiture proceedings in any meaningful way.  Second, the majority disregarded the deference owed to a circuit court's decision under an abuse of discretion standard of review.  Had the majority properly contextualized the issue and avoided substituting its judgment for the circuit court's, then it would have affirmed the court's refusal to remit the final $1,000 of the petitioner's forfeited bond.  Respectfully, I dissent, and I am authorized to state that Justice Bunn joins in this dissent.

      Bail serves a singular and necessary function in our criminal justice system: it enables certain criminal defendants to await trial out of jail while ensuring their return to the criminal process.  In other words, "[b]ail is security for the appearance of a defendant to answer to a specific criminal charge before any court or magistrate at a specific time or at any time to which the case may be continued."  W. Va. Code § 62-1C-2; *see also State v. Hedrick*, 204 W. Va. 547, 557, 514

---

[1] Mr. Wooten was indicted on one count of failure to register as a sex offender or provide notice of registration changes, second or subsequent offense, in September 2022.

6

S.E.2d 397, 407 (1999) ("The purpose of the bonds were [sic] to assure [the defendant's] appearance before the court."). So, when a defendant fails to appear "to answer to a specific criminal charge before any court . . . at a specific time," like Mr. Wooten did, there are consequences. Specifically, Rule 46(e)(1) of the West Virginia Rules of Criminal Procedure mandates that "[i]f there is a breach of condition of a bond, the circuit court *shall* declare a forfeiture of the bail."[2] W. Va. R. Crim. P. 46(e)(1) (emphasis added). As Rule 46(e)(1) makes clear, forfeiture is mandatory once the bailee fails to comply with a term of his bond; a circuit court has no discretion *not* to forfeit a defendant's bail bond once a condition of bond has been breached. *See In re C.E.*, 251 W. Va. 342, --- n.9, 913 S.E.2d 366, 372 n.9 (2025) ("The word 'shall' when used in our court rules is . . . generally afforded a mandatory connotation."); *see also Hedrick*, 204 W. Va. at 558 n.12, 514 S.E.2d at 408 n.12 (emphasizing "shall" in Rule 46(e)(1) in finding that because the bonding company "failed in its duty to see that Hedrick appeared before the court, the bonds were necessarily forfeited"). Put in the context of this matter, Rule 46(e)(1) mandated forfeiture of the bond at the moment Mr. Wooten failed to appear in court.[3]

And that makes sense: The petitioner, like any surety, had a duty "to act diligently to assure that its bailees conform[ed] to the conditions of their bonds in order to avoid forfeiture." *Hedrick*, 204 W. Va. at 558, 514 S.E.2d at 408; *see also United States v. Lacey*, 778 F.Supp. 1137, 1140 (D. Kan. 1991) ("As it is the surety's contractual obligation to insure the defendant's scheduled presence in court, it is incumbent on the surety to be aware of the defendant's location. . . . Therefore, the surety's liability is not conditioned upon notice by the government of the defendant's failure to appear."). Because the petitioner failed to ensure that Mr. Wooten conformed to the condition of his bond requiring his appearance in court, the bond the petitioner made on Mr. Wooten's behalf was rightfully forfeited. *See* W. Va. R. Crim P. 46(e)(1).

The process, however, does not end at the mandatory forfeiture, as the proceedings in the circuit court demonstrate. In addition to the equitable provision of Rule 46(e)(2), which is not at issue in this case, Rule 46(e)(4) provides that "the court *may* remit [a forfeiture] in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this

---

[2] This Rule is the "paramount authority" governing forfeiture procedure, and yet an examination of the requirements of that Rule is conspicuously absent from the majority's analysis. Syl. Pt. 5, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect."). West Virginia Code §§ 62-1C-7 through -13 also pertain to forfeiture and largely reiterate the requirements of Rule 46(e).

[3] The majority mischaracterizes the circuit court's underlying decision as *whether* to forfeit, which is not surprising given the majority's failure to address Rule 46(e) and the Rule's effects in its analysis. For example, the majority claims that the factors outlined in *Hedrick* "guide a circuit court's decision to forfeit all or part of a defendant's bond," and it concludes that the court's failure to give notice to the petitioner of forfeiture "tips the balance away from forfeiture." The circuit court also misused language, such as in setting a hearing to "show cause why the bond should not be forfeited," providing further justification for the need to correctly describe the process, not perpetuate the mischaracterizations.

subdivision."[4] (Emphasis added.) As remission is discretionary, this Court has identified eight criteria a court is to consider, to the extent relevant, in determining whether to remit an already forfeited bond:

> When a trial court is asked to remit all or part of a previously forfeited bail bond, pursuant to Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, the court shall consider the following criteria to the extent that they are relevant to the particular case under consideration: (1) the willfulness of the defendant's breach of the bond's conditions; (2) the cost, inconvenience and prejudice suffered by the government as a result of the breach; (3) the amount of delay caused by the defendant's default and the stage of the proceedings at the time of his or her disappearance; (4) the appropriateness of the amount of the bond; (5) the participation of the bondsman in rearresting the defendant; (6) whether the surety is a professional or a friend or member of the defendant's family; (7) the public interest and necessity of effectuating the appearance of the defendant; and (8) any explanation or mitigating factors presented by the defendant. These factors are intended as a guide and do not represent an exhaustive list of all of the factors that may be relevant in a particular case. All of the factors need not be resolved in the State's favor for the trial court to deny remission in full or in part. Moreover, it is for the trial court to determine the weight to be given to each of these various factors.[5]

*Hedrick*, 204 W. Va. at 548-49, 514 S.E.2d at 398-99, Syl. Pt. 3.

Rather than accept its role respective to the circuit court's, the majority proceeds to reweigh the factors considered relevant by the lower court. Not only that, the majority faults the court for not considering a "significant factor" that "decisively tips the balance away from forfeiture"—"the fact that the petitioner did not receive notice of Mr. Wooten's failure to appear within twenty-four hours, which deprived the bonding company of any opportunity to 'return[] the defendant to the custody of the court or magistrate' and thus ensure exoneration of any bond forfeiture in its entirety. *See* W. Va. Code § 62-1C-12(b)." Mem. Dec. at 6. But the *Hedrick* Court did not identify the opportunity a bonding company had to return a defendant to ensure exoneration as a factor to consider in determining whether to remit a forfeited bond, so it is not surprising that the court did not consider it. And although the *Hedrick* factors are not exhaustive, it is also unsurprising that the court did not here consider a surety's ability to exonerate because the petitioner did not argue it below. Neither the word "exonerate," nor any derivative of that word, nor West Virginia Code § 62-1C-12(b), nor Rule 46(f) (addressing exoneration) is anywhere to be found in the petitioner's

---

[4] Paragraph (2), governing setting aside a forfeiture, allows that "[t]he court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture."

[5] In reciting Syllabus Point 3 of *Hedrick*, the majority curiously omits the last sentence of our holding: "Moreover, it is for the trial court to determine the weight to be given to each of these various factors." The majority fails to signal the omission by including the customary "in part" designation that this Court generally uses and that the majority here in fact uses elsewhere.

8

briefing before the circuit court, transcript of argument on the forfeiture issue before that court, or the petitioner's briefing to this Court. Beyond that, it was "for the *trial court* to determine the weight given" to the factors. *Hedrick*, 204 W. Va. at 549, 514 S.E.2d at 399, Syl. Pt. 3, in part (emphasis added). So, it cannot be that the court abused its discretion by failing to give deciding weight to a factor that (1) the majority has just now interjected and (2) would have been within the circuit court's exclusive province to weigh had the factor actually been before it.

I am also troubled by the majority excusing Mr. Wooten's failures to appear by finding that his lack of transportation was a mitigating factor—an assertion so bold that not even the petitioner advanced it. The circuit court did not condition its orders that Mr. Wooten appear before it on his ability to find transportation, and the petitioner's obligation to assure Mr. Wooten's appearance was not loosened by West Virginia's status as "a rural state with little public transportation." Finding otherwise relieves a surety of its obligations to act diligently, monitor the location of bailees, and assure their appearance in court. Further, as the petitioner "bears the burden of establishing that the trial court abused its discretion in refusing to remit . . . all or part of a previously forfeited bond," I question the majority's manufacturing of a reason to assist the petitioner in meeting its burden. *Hedrick*, 204 W. Va. at 548, 514 S.E.2d at 398, Syl. Pt. 2, in part. Moreover, I have concerns about whether this mitigating factor will now become the go-to excuse for justifying missed appointments with probation officers and any other bond or probation conditions that require a defendant to be anywhere other than the defendant's usual place of abode.

In my view, mindful that "[u]nder the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances," the circuit court was well within its discretion in declining to remit the forfeited bond in whole. *Gribben v. Kirk*, 195 W. Va. 488, 500, 466 S.E.2d 147, 159 (1995). The court remitted nearly all of the forfeited bond but found that full remission was not warranted due to Mr. Wooten's repeated failures to appear, the delay in holding the pretrial hearing and in resolving Mr. Wooten's case occasioned by his failure to appear, the public interest in ensuring that defendants appear in court, and the lack of any mitigating evidence for his failure to appear—a choice within permissible bounds. Considering, too, that the petitioner's neglect of duty defeated the essential purpose of the bond, the record fully supports the court's declination to remit a small fraction of the forfeited bond. The majority's contrary determination resulted from its misalignment of priorities in the bail and bail forfeiture contexts and its failure to heed *Hedrick*'s mandates that it is for a circuit court to weigh the factors and for the petitioner to establish an abuse of discretion, not this Court. In my opinion, the majority's result, then, constituted a "substitut[ion] of its] discretion for that of the trial court"—something it was also prohibited from doing under *Hedrick*. 204 W. Va. at 552, 514 S.E.2d at 402 ("In considering this issue, we will not substitute our discretion for that of the trial court . . . .").

Finally, I would be remiss if I did not highlight the opportunity missed by the majority to discuss and clarify an area of the law that has received little attention from this Court. As touched on, both the majority and the circuit court confused the bond forfeiture process under Rule 46(e), and this case presented an opportunity to clarify that process and address the interplay of Rule 46(e), West Virginia Code § 62-1C-12(b), and West Virginia Code § 51-10-5a(d). Instead of taking that opportunity, the majority simply wedges everything into *Hedrick* to obtain its results-driven outcome, leaving courts with no guidance and the illogical impression that professional bonding

9

companies are relieved of their duty to monitor bailees and ensure they appear in court.  For these reasons, I respectfully dissent, and I am authorized to state that Justice Bunn joins in this dissent.