716 S.E.2d 491

LAWYER DISCIPLINARY
BOARD, Petitioner,

v.

Douglas A. SMOOT, Respondent.

No. 34724.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 15, 2010.

Decided Nov. 17, 2010.

Rachael L. Fletcher Cipoletti, Chief Counsel, Andrea J. Hinerman, Jessica H. Donahue, Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

Stephen R. Crislip, A.L. Emch, Ben M. McFarland, Jackson Kelly PLLC, Charleston, WV, for Respondent.

Thomas P. Maroney, Maroney, Williams, Weaver & Pancake, PLLC, Charleston, WV, for Amici Curiae, National Black Lung Association; Appalachian Citizens' Law Center, Inc.; and West Virginia Labor Federation, AFL–CIO.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Assistant Attorney General, Charleston, WV, for Amicus Curiae, Appalachian Citizens' Law Center, Inc.; and West Virginia Labor Federation, AFL–CIO.

Grant Crandall, United Mine Workers of America, Triangle, VA, for Amicus Curiae, United Mine Workers of America.

DAVIS, Chief Justice:

In this lawyer disciplinary proceeding brought against Douglas A. Smoot, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board (hereinafter referred to as "the HPS") has recommended that the matter be dismissed. Before this Court, the Office of Disciplinary Counsel (hereinafter referred to as "the ODC") argues that Mr. Smoot violated Rules 3.4, 4.3, 8.4(c), and 8.4(d) of the West Virginia Rules of Professional Conduct [1] based upon his actions in a federal black lung case wherein he, as counsel for the employer, provided a *pro se* claimant with only a portion of the report of a medical examination prepared on behalf of the employer. The ODC recommends sanctions, while Mr. Smoot argues that the HPS correctly recommended that this matter be dismissed.[2] For the reasons set forth below, we reject the recommendation of the HPS and find that Mr. Smoot has violated Rules 3.4, 8.4(c), and 8.4(d) of the Rules Professional Conduct. Accordingly, Mr. Smoot's license to practice law is suspended for a period of one year, along with other specific sanctions more fully set out in the Conclusion section of this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The action underlying this lawyer disciplinary proceeding is a claim for federal black lung benefits that was filed with the United States Department of Labor by Mr. Elmer Daugherty (hereinafter referred to as "Mr. Daugherty"), *pro se*, on or around May 30, 2000.[3] His employer, Westmoreland Coal Company, was represented in this matter by Mr. Douglas A. Smoot,[4] the respondent herein (hereinafter referred to as "Mr. Smoot"). Mr. Smoot notified Mr. Daugherty that the employer was exercising its right, pursuant to 20 C.F.R. § 725.414 (1996),[5] to have Mr.

---

1. As explained in note 13, *infra*, we will address only three of the violations.

2. We wish to acknowledge the contribution of the various amici curiae who filed briefs in this case. We appreciate their participation and consider their position in determining the outcome of this case.

3. In filing his claim, Mr. Daugherty apparently was counseled and assisted by Delisa Legg, a

Black Lung Benefits Counselor at the Rainelle Medical Center.

4. Westmoreland Coal Company retained the law firm of Jackson Kelly PLLC to represent its interests in this matter, and Jackson Kelly initially assigned the case to Mr. Smoot.

5. The regulations governing federal black lung claims were significantly revised on December 20, 2000, with an effective date of January 19,

Daugherty examined by a physician of the employer's choosing. The employer-requested examination was scheduled to be conducted by Dr. George L. Zaldivar on February 7, 2001. On January 26, 2001, a United States Department of Labor District Director (hereinafter referred to as "District Director")[6] made an initial determination awarding black lung benefits to Mr. Daugherty. By letter dated January 30, 2001, the employer requested a formal hearing before an administrative law judge. No further proceedings were had before the District Director at this time, and the case file was transferred to the United States Department of Labor Office of Administrative Law Judges on March 19, 2001.

Dr. Zaldivar examined Mr. Daugherty on February 7, 2001, as previously scheduled, and, on May 22, 2001, Mr. Smoot received Dr. Zaldivar's report of the same, which included a letter titled "History and Physical Examination," a two page report of arterial blood gas studies, eleven pages reporting results of pulmonary function tests, an ILO–UC form indicating Dr. Zaldivar made a reading of an x-ray showing "Large Opacities Size A," a one-page lab report showing carbon monoxide and hemoglobin levels, an eight-page exercise report of EKG and pulmonary readings, and a five-page narrative summary dated May 16, 2001, that included a finding that Mr. Daugherty suffered from complicated pneumoconiosis.[7]

On November 12, 2001, Mr. Smoot submitted to the Honorable Daniel L. Leland, the administrative law judge presiding over Mr. Daugherty's claim (hereinafter referred to as "ALJ Leland"), various documents that he intended to submit into evidence at a hearing set for January 25, 2002.[8] The cover letter accompanying the documents, which was addressed to ALJ Leland, signed on behalf of Mr. Smoot, and copied to Mr. Daugherty, stated:

> Enclosed please find the following items of evidence which pertain to the above-referenced federal black lung claim:
>
> 1. Exam report of Dr. George L. Zaldivar dated February 7, 2001
>
> 2. Report of Dr. Harold B. Spitz containing his interpretation of the CT scan dated June 27, 2001.
>
> 3. Cirricula vitae of Drs. Zaldivar and Spitz.
>
> This information is transmitted pursuant to the applicable regulations.

Prior to transmitting the documents identified in the cover letter to ALJ Leland and Mr. Daugherty, Mr. Smoot removed from Dr. Zaldivar's examination report the five-page narrative summary dated May 16, 2001. Ultimately there was no hearing on January 25, 2002, and, due to six continuances sought and obtained by Mr. Daugherty, the case lingered for three and one-half years.

In March 2004, Mr. Robert F. Cohen, Jr., submitted a notice of representation on behalf of Mr. Daugherty. In April 2004, Jackson Kelly transferred the file from its Charleston, West Virginia, office to its Morgantown, West Virginia, office. In addition, the matter was reassigned to lawyers Kathy L. Snyder and Dorothea J. Clark.[9] In September 2004, Mr. Cohen filed interrogatories

---

2001. *See Elm Grove Coal Co. v. Director, O.W.C.P,* 480 F.3d 278, 283 (4th Cir.2007). Because Mr. Daugherty's claim was filed prior to the January 2001 effective date of the revised regulations, those regulations do not apply to his claim. Rather, his claim is governed by the regulations as they existed when it was filed. *See* 20 C.F.R. § 725.2 (2003).

6. Under the regulations that apply to Mr. Daugherty's claim, the District Directors were known as Deputy Commissioners. However, for ease of reference, throughout this opinion we will utilize the modern title "District Director."

7. The finding of complicated pneumoconiosis is significant because, pursuant to 20 C.F.R.

§ 718.304, there is an irrebuttable presumption that a miner found to have complicated pneumoconiosis is totally disabled thereby.

8. Pursuant to the relevant version of 20 C.F.R. § 725.456(b)(1), when a case is pending before the Office of Administrative Law Judges, "documentary material, including medical reports, which was not submitted to the [district director], may be received in evidence subject to the objection of any party, if such evidence is sent to all other parties at least 20 days before a hearing is held in connection with the claim."

9. According to the HPS, Mr. Smoot's last submission in this matter was in December 2003.

and requests for production of documents on behalf of Mr. Daugherty. This was the first discovery request on behalf of Mr. Daugherty. In response, Ms. Snyder provided a "Supplemental Report of Dr. George L. Zaldivar," dated September 20, 2004, which included the narrative report dated May 16, 2001, that had not previously been disclosed. Thereafter, in October 2004, Mr. Cohen filed a motion to compel discovery requesting all medical evidence that had not previously been disclosed to Mr. Daugherty.

The first hearing on Mr. Daugherty's claim was held on October 19, 2004, with Administrative Law Judge Michael P. Lesniak (hereinafter referred to as "ALJ Lesniak") presiding over the claim. At this hearing, Mr. Cohen argued that Mr. Smoot had disassembled Dr. Zaldivar's May 2001 medical examination report and removed the doctor's narrative summary before providing the same to Mr. Daugherty, and further alleged that Mr. Smoot had provided to the employer's own medical experts only information that was favorable to the employer's position. Mr. Smoot appeared at the hearing and acknowledged that the narrative summary portion of the report had not been provided to Mr. Daugherty or ALJ Leland. Following the hearing, by order entered October 22, 2004, ALJ Lesniak granted Mr. Daugherty's motion to compel and scheduled a second hearing for November 10, 2004.

Thereafter, by letter dated October 27, 2004, Ms. Snyder notified ALJ Lesniak that her client had decided to accept the initial determination by the District Director awarding benefits to Mr. Daugherty, and therefore withdrew its request for a hearing before the Office of Administrative Law Judges. Accordingly, Ms. Snyder asked that ALJ Lesniak remand the claim to the District Director to process a pay order. ALJ

Lesniak, by order entered November 9, 2004, rescheduled the upcoming hearing to December 16, 2004, and directed the employer to deliver to Mr. Cohen, by November 19, 2004, "all medical records and/or reports in its possession regarding [Mr. Daugherty]." Ms. Snyder responded by filing a motion to cancel the hearing and remand the claim to the District Director, asserting that the ALJ no longer had jurisdiction to decide the matter by virtue of the employer's decision to accept the initial determination awarding benefits. Ms. Snyder also sought a stay of the ALJ's order compelling the employer to turn over to Mr. Daugherty all medical records and reports in its possession regarding Mr. Daugherty's claim. ALJ Lesniak denied Ms. Snyder's motion by order entered December 6, 2004, and directed that the employer "immediately comply with [his] Order of November 2, 2004," compelling the production of "all medical records and/or reports in its possession regarding Claimant." At the December 16th hearing, Ms. Snyder and another Jackson Kelly lawyer, William S. Mattingly, acknowledged a failure to comply with ALJ Lesniak's three separate orders to turn over all requested medical records, and reasserted their position that ALJ Lesniak lacked jurisdiction in this matter.[10]

By order entered March 21, 2005, ALJ Lesniak remanded the case to the District Director.[11] In the remand order, ALJ Lesniak admonished Mr. Smoot "not to tamper with exhibits, potential exhibits and/or any type of documents which may be entered into evidence in the future." Mr. Cohen filed a motion for reconsideration of the ALJ's decision to not certify the matter to the United States district court, and, on June 27, 2005, the ALJ denied the motion and suggested the attorneys attempt to reconcile the matter on an informal basis. In August 2005, Mr. Cohen notified ALJ Lesniak that Jackson

10. Although some medical evidence was apparently provided pursuant to the discovery requests, non-testifying expert reports were not provided by the employer based upon its position that the reports were not discoverable.

11. In the same order, ALJ Lesniak declined to certify the matter to the United States district court with a request that the district court order the law firm of Jackson Kelly to comply with ALJ Lesniak's discovery orders, finding that the re-

quest would serve only to further delay black lung benefits payments by the employer to Mr. Daugherty, and that, even if the district court ordered Jackson Kelly to comply with his discovery orders, "the result would probably be more of the same, i.e., Jackson Kelly PLLC being in possession of medical reports detrimental to its defense which it not only has failed to disclose to Claimant, but also to its own consultants."

Kelly had not contacted him to discuss the disassembly of Dr. Zaldivar's May 16, 2001, report, and renewed his request that the matter be certified to the United States district court.[12] Despite noting that Mr. Cohen's request was filed out of time, ALJ Lesniak nevertheless certified the matter to the United States district court for consideration of sanctions.

By order entered August 30, 2006, the United States district court granted the employer's motion to dismiss based, in part, upon the court's determination that the certification was actually a criminal contempt action that was not properly before it. The district court commented that, although the failure to comply with the discovery orders was "clearly contrary to law and subject to contempt sanction, ... the time for civil sanctions had passed" since the remedy was compliance with the prior court order. Nevertheless, the district court ordered that its clerk "make available to the Office of Disciplinary Counsel of the West Virginia State Bar a copy of the file in this case for such action as that agency deems appropriate." With regard to Mr. Smoot's alteration of Dr. Zaldivar's report, the District Court opined that Jackson Kelly's "excuses and arguments" were "flimsy at best." The district court's order and file were delivered to the ODC on September 1, 2006. In response, the ODC issued the following formal charges against Mr. Smoot on February 2, 2009:

29. Because Respondent disassembled the May 16, 2001 report of his client's own expert, Dr. Zaldivar, before providing the same to Mr. Daugherty in November 2001 during the course of the underlying black lung proceedings, Respondent violated Rule 3.4(a) of the Rules of Professional Conduct, which provides as follows:

12. Jackson Kelly contends that it made no effort to reach a monetary settlement of this issue because it had obtained an opinion from Steve Crislip, another Jackson Kelly attorney and Mr. Smoot's counsel herein, stating it could not ethically negotiate a settlement of potential ethics violations.

13. The ODC additionally charged Mr. Smoot with violating Rule 4.3 of the Rules of Professional Conduct, which prohibits a lawyer who is

**Rule 3.4. Fairness to opposing party and counsel.**

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

. . . .

31. Because Respondent engaged in misconduct by improperly withholding material having evidentiary value and which conduct consequently had a significant effect on a legal proceeding, Respondent violated Rules 8.4(c) and 8.4(d) of the Rules of Professional Conduct, which provide as follows:

**Rule 8.4. Misconduct.**

[. . . .]

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.[13]

(Footnote added).

The HPS investigated the allegations and, by report dated March 30, 2010, recommended that the Statement of Formal Charges be dismissed in its entirety based upon the Panel's conclusion that the ODC had failed to meet its burden of establishing by clear and convincing evidence that the Respondent violated the Rules of Professional Conduct as alleged.

The HPS concluded that any alleged violations of the Rules that were based upon a failure to comply with discovery orders issued by ALJ Lesniak were unsupported by the evidence. Further, the HPS found that

dealing with an unrepresented person from stating or implying that the lawyer is disinterested. We decline to address this violation because the HPS failed to provide findings of fact and conclusions of law with respect thereto. Nevertheless, we note that, if we were to address this violation, we would conclude that the evidence was insufficient to establish, by clear and convincing evidence, that Mr. Smoot violated Rule 4.3.

the evidence was clear in demonstrating that the Respondent never participated in any decision to refuse to follow ALJ Lesniak's orders to produce documents. Instead, those decisions had been made by other Jackson Kelly attorneys who were assigned to the case at that time. Thus, the HPS limited its analysis to the factual allegation that Mr. Smoot had altered Dr. Zaldivar's examination report by removing the narrative summary. The HPS opined that,

> in order to establish that the Respondent violated Rule 3.4(a) by withholding the May 16, 2001 letter, the ODC must establish by clear and convincing evidence that the act of withholding Dr. Zaldivar's May 16, 2001 letter was a violation of some applicable statute, rule or regulation, e.g., that it was unlawful.

The HPS observed that, under the applicable black lung regulations, Mr. Smoot was not required to turn over the report once the case was under the jurisdiction of the ALJ, and then found that Dr. Zaldivar's report was not generated until the matter was before the ALJ. Furthermore, because no discovery request had been made of Mr. Smoot, he had no duty to turn over the report. The HPS finally determined that, because Mr. Smoot did not violate any black lung regulation by withholding a portion of Dr. Zaldivar's report, he did not violate Rule 3.4(a) of the West Virginia Rules of Professional Conduct.

The HPS next observed that the matter certified to the United States district court, and referred by that Court to the ODC, involved the refusal of Jackson Kelly attorneys to comply with ALJ Lesniak's discovery orders. The HPS concluded that Respondent Smoot played no role in the decisions pertaining to ALJ Lesniak's discovery orders.[14]

With respect to Mr. Smoot's alleged violation of Rule 8.4, the HPS commented:

This Panel is concerned that while the Respondent argues correctly that he had no duty to turn over the adverse medical examination, he turned over part of the examination without disclosing that he had disassembled the same. An argument was made by Disciplinary Counsel that he did so for the purpose of misleading the claimant and the Court that he indeed had turned over the entire report. This Panel heard testimony that in Black Lung cases, reports of experts are disassembled and in Black Lung cases the opinions of experts are withheld and not disclosed until required by rule or regulation. This Panel is bothered by this practice but is constrained by the evidence in this case, including all Respondent's witnesses who testified that the actions of this Respondent were consistent with Black Lung practice.

Accordingly, the Panel found no violation of Rule 8.4. The Panel also concluded there was no violation of Rule 4.3, but provided no findings of fact or conclusions of law specifically pertaining to that Rule.[15]

## II.

### STANDARD OF REVIEW

■ It is well established that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of West Virginia State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984). Accordingly,

> [a] *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising

---

14. The Panel also found that the United States district court did not perform any legal analysis of Mr. Cohen's allegations of wrongdoing. Instead, the court merely summarized the allegations in an effort to list them all for ease of review by the West Virginia State Bar.

15. Accordingly, we decline to address Mr. Smoot's violation of Rule 4.3. See note 13 *supra.*

its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). With the foregoing principles as a guide, we proceed to address the issues raised in this case.

## III.

## DISCUSSION

While the formal charges against Mr. Smoot alleged four violations of the Rules of Professional Conduct, we find it necessary to address only three violations.[16] However, before addressing these violations, we must first resolve an argument raised by Mr. Smoot that the charges against him were not timely asserted.

### A. Timeliness

As a preliminary matter, Mr. Smoot asserts that the Lawyer Disciplinary Board failed to act in a timely manner, and, therefore, the Statement of Charges against him should be dismissed. In support of his argument, he notes that the misconduct alleged in the formal charges against him occurred in November 2001. In addition, he submits that, no later than September 2004, when Ms. Snyder provided the parties with unaltered copies of Dr. Zaldivar's examination report, Mr. Daugherty's counsel, Mr. Cohen, and all the adverse parties to Mr. Daugherty's black lung claim, knew that he had removed the narrative summary portion of Dr. Zaldivar's examination report prior to tendering the same to ALJ Leland and Mr. Daugherty. Nevertheless, the Statement of Charges against him was not filed until February 2009. He argues that this filing was untimely pursuant to Rule 2.14 of the West Virginia Rules of Lawyer Disciplinary Procedure. We disagree.

Rule 2.14 of the West Virginia Rules of Lawyer Disciplinary Procedure provides that "[a]ny complaint filed more than two years

after the complainant knew, or in the exercise of reasonable diligence should have known, of the existence of a violation of the Rules of Professional Conduct, shall be dismissed by the Investigative Panel."

Mr. Smoot reasons that the "complainant," for purposes of Rule 2.14, is Mr. Daugherty's counsel, Mr. Cohen, and/or "all adverse parties" to Mr. Daugherty's claim for black lung benefits. This reasoning is flawed, however, insofar as neither Mr. Cohen nor any other adverse party to the federal black lung proceedings initiated the instant disciplinary action against Mr. Smoot by filing a complaint. Instead, these proceedings were initiated by virtue of the Judgment Order of the United States District Court for the Southern District of West Virginia being provided to the Office of Disciplinary Council. In its Judgment Order, which set out the facts underlying the charges against Mr. Smoot, the United States district court included the following instructions:

> The Clerk is directed to make available to *the Office of Disciplinary Counsel of the West Virginia State Bar* a copy of the file in this case for such action as that agency deems appropriate.

> The Clerk is hereby directed to send copies of this Judgment Order to all counsel of record *and to the Office of Disciplinary Counsel of the West Virginia State Bar* and to retire this case from the active docket of the Court.

Because the United States district court brought the alleged misconduct to the attention of the ODC, that tribunal is the "complainant" for purposes of Rule 2.14. This conclusion is in accord with this Court's practice of alerting the ODC of questionable ethical conduct on the part of lawyers who practice in this State. *See, e.g., Rose ex rel. Rose v. St. Paul Fire & Marine Ins. Co.*, 215 W.Va. 250, 258, 599 S.E.2d 673, 681 (2004) ("In light of the many potential transgressions in the record, we find it necessary to refer this matter to the Office of Disciplinary Counsel for further review."); *Covington v. Smith*, 213 W.Va. 309, 582 S.E.2d 756 (2003) (referring a matter to the Office of Disciplinary Counsel for further proceedings); *Gum*

16. See note 13 *supra*.

*v. Dudley*, 202 W.Va. 477, 491, 505 S.E.2d 391, 405 (1997) (same). Mr. Smoot has not alleged that the complaint of the United States district court was untimely. Therefore, we will proceed to address three of the ethics charges that have been rendered against Mr. Smoot.

### B. Violation of Rule 3.4 [17]

■ The first charge against Mr. Smoot was that his removal of the narrative portion of Dr. Zaldivar's report prior to providing the balance of the report to ALJ Leland and to Mr. Daugherty violated Rule 3.4(a) of the West Virginia Rules of Professional Conduct. Rule 3.4(a) provides that

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or *unlawfully alter*, destroy or conceal *a document* or other material *having potential evidentiary value*. A lawyer shall not counsel or assist another person to do any such act;

(Emphasis added). Mr. Smoot concedes that he removed the narrative portion of Dr. Zal-

divar's report.[18] Thus, there is no dispute that the document was altered. Furthermore, it is clear that Dr. Zaldivar's narrative report had potential evidentiary value insofar as the report included a summary of Dr. Zaldivar's finding that Mr. Daugherty suffered from complicated pneumoconiosis, which finding was sufficient to trigger an irrebuttable presumption that Mr. Daugherty was totally disabled. *See* 20 C.F.R. § 718.304. Therefore, our determination of whether Mr. Smoot's disassembly of Dr. Zaldivar's report violated Rule 3.4(a) turns on whether the alteration of that document was done "unlawfully."

At the time Mr. Smoot received the report from Dr. Zaldivar and provided the modified version to Mr. Daugherty and ALJ Leland, Mr. Daugherty's case was pending before the United States Department of Labor's Office of Administrative Law Judges. As Mr. Smoot correctly points out, at this stage of the proceedings the disclosure of medical reports was governed by the version of 20 C.F.R. § 725.456(b)(1) [19] that was in effect in

---

**17.** At the outset, we note that, while this Court has been presented with various facts pertaining to conduct other than that specifically related to the formal charges against Mr. Smoot, and conduct by attorneys other than Mr. Smoot, we confine our analysis to the conduct expressly identified in the ODC's Formal Statement of Charges as the basis for said charges, which is Mr. Smoot's disassembly of Dr. Zaldivar's medical report.

**18.** In his brief to this Court, Mr. Smoot states:

Smoot's uncontradicted explanation for why he did not submit the May 16, 2001 letter from Dr. Zaldivar is straightforward and simple: (1) that at that time it was Smoot's standard practice to submit, at a minimum, the pulmonary function data, the chest x-ray, the arterial blood gas data, and the ILO–UC form that resulted from a medical examination (e.g. the purely factual or objective evidence); (2) that he had no intention of using Dr. Zaldivar as his expert or in any way relying on the May 16, 2001 letter at the time of his submission on November 12, 2001 (he did in fact intend to use the objective findings of Dr. Zaldivar only because he had already had that information reviewed by other physicians, which is why he submitted them); (3) that under the applicable FBL regulations, a party is required, unless properly asked for other discoverable information in a discovery request, to submit 20 days prior to the hearing only that which it intends

to introduce at the hearing; and conversely (4) that under applicable FBL regulations, a party does not submit (and does not have to identify) that which it does not intend to rely upon at a hearing.

**19.** The ODC has contended that the disclosure of Dr. Zaldivar's report is governed by 20 C.F.R. § 725.414(c). However, that provision is in a section of the regulations titled "Adjudication by the Deputy Commissioner [now District Director]" and expressly directs that the report of a medical examination be "submitted to the deputy commissioner [now District Director]." 20 C.F.R. § 725.414(c). At the time Mr. Smoot received Dr. Zaldivar's report, Mr. Daugherty's case was under the jurisdiction of the Office of Administrative Law Judges. Although the cases are conflicting as to when, exactly, jurisdiction transferred from the Deputy Commissioner to the ALJ under the old rules, it is clear that, under either standard, the ALJ had obtained jurisdiction at the time Mr. Smoot gained possession of Dr. Zaldivar's medical report pertaining to Mr. Daugherty. *Compare Tolliver v. P.G. & H., Inc.*, 172 F.3d 864 (4th Cir.1999) (concluding that a claim is no longer pending before the District Director as of the date the claim is transferred from the District Director to the Office of Administrative Law Judges) *with Hall v. Director, Office of Workers' Comp. Programs*, 10 Black Lung Rep. (*Juris*) 1–107, 1987 WL 107334, at *2 (Ben.Rev. Bd.1987) (finding a claim "was no longer pending before the deputy commissioner, for the pur-

the year 2000, when Mr. Daugherty filed his claim.[20]

Pursuant to 20 C.F.R. § 725.456(b)(1), "documentary material, *including medical reports*, which was not submitted to the deputy commissioner, *may* be received in evidence subject to the objection of any party, if such evidence is sent to all other parties at least 20 days before a hearing is held in connection with the claim." (Emphasis added).

■ It is noteworthy that 20 C.F.R. § 725.456(b)(1) does not require, in mandatory terms, that certain medical reports be disclosed. Instead, it identifies evidence, including medical reports, that "may" be admitted into evidence. "[T]he word 'may' generally is afforded a permissive connotation, which renders the referenced [regulation] discretionary, rather than mandatory, in nature." *In re Cesar L.*, 221 W.Va. 249, 261, 654 S.E.2d 373, 385 (2007). *See also State v. Hedrick*, 204 W.Va. 547, 552, 514 S.E.2d 397, 402 (1999) ("The word 'may' generally signifies permission and connotes discretion."). In this regard, Mr. Smoot contends that, because he did not desire to have Dr. Zaldivar's narrative report received in evidence,

he properly excluded the same from his disclosure of the remainder of Dr. Zaldivar's report.[21] However, the facts of this case demonstrate that Mr. Smoot did not simply decline to furnish the medical report and forego having it received into evidence, which, under 20 C.F.R. § 725.456(b)(1), was within his right to do. Instead, he provided the ALJ and Mr. Daugherty with only part of the document provided to him by Dr. Zaldivar, with no indication to them that any portion of the report had been withheld.[22]

■ To determine if Mr. Smoot's removal of the narrative portion of the report was indeed proper, we consider whether the term "medical reports," as used in 20 C.F.R. § 725.456(b)(1), authorizes the production of a *partial* medical report for admission into evidence. In doing so, we are mindful that, "[i]t is generally accepted that statutes and administrative regulations are governed by the same rules of construction." *Snider v. Fox*, 218 W.Va. 663, 667, 627 S.E.2d 353, 357 (2006) (internal quotations and citations omitted).

■ At the time relevant to Mr. Daugherty's claim, the term "medical report" was not defined in the applicable regulations.[23]

---

pose of Section 725.456(d), after the claimant requested a formal hearing ... even though the case file was still in the physical possession of the deputy commissioner"). In the instant matter, the employer requested a formal hearing before an Administrative Law Judge on January 30, 2001, and the claim was transferred on March 19, 2001. Dr. Zaldivar's report was dated May 16, 2001, which is subsequent to both the request for a formal hearing and the transfer of the claim to the Office of Administrative Law Judges. Because the case had been transferred to the office of Administrative Law Judges by the time Mr. Smoot received Dr. Zaldivar's report, his disclosure of the same is governed by 20 C.F.R. § 725.456 (2000). 20 C.F.R. § 725.456 falls under the title "Hearings," which pertains to hearings before the Office of Administrative Law Judges.

20. The regulations governing federal black lung claims were significantly revised on December 20, 2000. See note 5 *supra*.

21. Mr. Smoot states that, while he chose not to include Dr. Zaldivar's conclusions because he deemed them to be equivocal, he tendered the remaining portions of the report because the

same had been provided to other expert witnesses whose testimony might be excluded if the evidence upon which their opinions were based had not been entered into evidence.

22. There is evidence in the record indicating that the United States Department of Labor Office of Administrative Law Judges claim file does not contain the partial medical report that was submitted to ALJ Leland by Mr. Smoot on November 12, 2001; however, Mr. Smoot does not argue that he never submitted the report to ALJ Leland.

23. " 'In the absence of any definition of the intended meaning of words or terms used in a [regulation], they will ... be given their common, ordinary and accepted meaning in the connection in which they are used.' " *Subcarrier Commc'ns, Inc. v. Nield*, 218 W.Va. 292, 300, 624 S.E.2d 729, 737 (2005) (quoting Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982)). *See, e.g., Cookman Realty Group, Inc. v. Taylor*, 211 W.Va. 407, 411–12, 566 S.E.2d 294, 298–99 (2002) ("Since neither 'facility' nor 'activity' are defined in the regulations,

However, we are provided guidance as to the intended meaning of this term based upon the current version of 20 C.F.R. § 725.414, which pertains to the development of evidence before the district director and provides that "a medical report shall consist of a physician's written assessment of the miner's respiratory or pulmonary condition." 20 C.F.R. § 725.414(a)(1) (2010). In view of this definition, we now hold that, for purposes of administrative black lung litigation before the United States Department of Labor Office of Administrative Law Judges, a "medical report" consists of both the objective medical test results *and* the physician's written assessment of the miner's respiratory or pulmonary condition.[24]

We believe this conclusion is supported, from a practical perspective, by the stage of the proceedings at the time Mr. Smoot withheld the narrative portion of Dr. Zaldivar's report. As we previously noted, at the relevant time this case was pending before the ALJ, and Dr. Zaldivar's report was being provided by Mr. Smoot in anticipation of an upcoming hearing. It has been recognized that "ALJ hearings in black lung cases are adversarial." *BethEnergy Mines, Inc. v. Cunningham*, 104 Fed.Appx. 881, 884 (4th Cir.2004) (citing *Department of Labor v. Triplett*, 494 U.S. 715, 733–34, 110 S.Ct. 1428, 1438–39, 108 L.Ed.2d 701 (1990) (Marshall, J., concurring in the judgment)). The purpose for providing medical reports to the opposing party in an adversarial setting is to allow that party to contest the evidence. Providing only a partial version of a medical report to the opposing party seriously impedes that party's ability to contest the same. This is especially true, where, as here, the opposing party was not represented by counsel at the time of the partial disclosure.[25] Therefore, we find that, although 20 C.F.R.

§ 725.456(b)(1) does not require that medical reports be voluntarily provided to the opposing party, when such a report is provided, it must be the entire report. *Cf.* 37 C.J.S. *Fraud* § 32, at 213–14 (2008) ("[A] duty to disclose will be imposed on a party insofar as he or she voluntarily makes a disclosure; thus, a party who assumes to speak must make a full and fair disclosure as to the matters about which he or she assumes to speak." (footnotes omitted)).

Finally, we note that, although Mr. Smoot presented evidence to the HPS to show that his removal of the narrative portion Dr. Zaldivar's report before submitting the same to be received into evidence was a common practice, we find the weight of the evidence in this case commands the opposite conclusion. For example, ALJ Lesniak repeatedly expressed his shock and dismay with regard to Mr. Smoot's failure to submit Dr. Zaldivar's entire report. Indeed, in an order remanding the case to the District Director, ALJ Lesniak declared,

> I find the separating of Dr. Zaldivar's May 16, 2001 narrative to be unconscionable and reprimand the attorney or attorneys responsible; this was a deliberate attempt to mislead the Claimant, I expected more from this law firm. I find their defense of this practice (withholding Dr. Zaldivar's narrative, which was surely detrimental to Westmoreland's case) to be ludicrous. I admonish the attorneys involved not to tamper with exhibits, potential exhibits and/or any type of documents which may be entered into evidence in the future.

Similarly, in his "DECISION ON MOTION FOR RECONSIDERATION" dated June 27, 2005, ALJ Lesniak further commented that

> tive summary of his conclusions from a "medical report" as defined by 20 C.F.R. § 725.414(a)(1) (2010).

such terms must be given their common, ordinary and accepted meanings.").

**24.** Mr. Smoot argues that "under the 'new regulations' (e.g. those that took effect after January 19, 2001), the so-called 'disassembly' is required under 'evidence limiting' regulations." This argument is disingenuous. While the "new" rules do limit the number of objective tests that may be submitted by each party, the new rules do not authorize Mr. Smoot to omit a physician's narra-

**25.** We note that the HPS expressly rejected Mr. Smoot's contention that the test results in the portions of the report that were provided to Mr. Daugherty demonstrated, in a manner that was obvious even to one not educated in the area of black lung, that Mr. Daugherty suffered from black lung.

I myself have never before encountered an attorney tampering with evidence, in this case a medical exhibit, not as an Administrative Law Judge and not during my years of practicing law. Thus, to my knowledge this is not common practice, not by attorneys who appear before me and not by the law firm Jackson Kelly.

ALJ Lesniak's conclusion that it is not the normal practice in federal black lung cases to remove a portion of a medical report finds further support in the report of Robert J. Crisalli, M.D., a physician who also examined Mr. Daugherty on behalf of his employer, Westmoreland Coal Company. In his report, Dr. Crisalli detailed the "previously obtained medical data and documents" he reviewed before reaching his conclusions. In the portion of his report referring to the examination and evaluation that had been performed by Dr. Zaldivar, Dr. Crisalli states that "[t]he usual summary letter from Dr. Zaldivar is not in the packet." Additionally, we note that, after hearing all the evidence, even the Hearing Panel Subcommittee concluded that "the Panel does not agree with the Respondent's position that Dr. Zaldivar's packet of information was, in fact, two separate reports. This Panel finds that the packet of information [from Dr. Zaldivar] is to be considered as one document that was generated from the employer's Adverse Medical Examination."

In view of the foregoing, we find the evidence was sufficient to prove that Mr. Smoot violated Rule 3.4 of the West Virginia Rules of Professional Conduct by unlawfully removing Dr. Zaldivar's narrative from the medical report provided to the ALJ and Mr. Daugherty.[26]

### C. Violation of Rules 8.4(c) and 8.4(d)

The ODC also charged Mr. Smoot with violating Rules 8.4(c) and (d) of the West Virginia Rules of Professional Conduct based upon the same conduct that formed the basis of the Rule 3.4 violation, *i.e.*, removing the narrative portion of Dr. Zaldivar's report prior to providing it to the ALJ and Mr. Daugherty. Rules 8.4(c) and (d) provide:

It is professional misconduct for a lawyer to:

. . . .

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

It has been observed that "Rule 8.4(c) is implicated when a lawyer misleads or lies to a tribunal." ABA, Annotated Model Rules of Professional Conduct, R. 8.4(c), at 585 (6th ed.2007). *See, e.g., In re Thompson*, 366 S.C. 367, 622 S.E.2d 540 (2005) (lawyer violated rule prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation by, *inter alia*, altering an affidavit and offering the affidavit to court). Rule 8.4(c) may also be violated by deceiving an adverse party. *See* ABA, Annotated Model Rules of Professional Conduct, R. 8.4(c), at 586 ("A lawyer can violate Rule 8.4(c) by deceiving an adverse party."). *See, e.g., In re Zeiger*, 692 A.2d 1351 (D.C.1997) (lawyer violated Rule 8.4(c) by altering hospital records before providing them to opposing party's insurer). Likewise, failing to notify a tribunal or opposing party that a document has been altered has been found to violate Rule 8.4(d). *See, e.g., Lawyer Disciplinary Bd. v. Veneri*, 206 W.Va. 384, 386, 524 S.E.2d 900, 902 (1999) (finding lawyer violated Rule 8.4(d) by failing to inform family law master or opposing counsel that proposed Qualified Domestic Relations Order had been altered while in lawyer's office).

As we acknowledge above, Mr. Smoot has conceded that he purposefully removed the narrative portion of Dr. Zaldivar's report before providing the report to ALJ Leland and Mr. Daugherty, thus, the absence of the narrative report in the document provided to ALJ Leland and Mr. Daugherty was clearly

---

**26.** In addition, we observe that ALJ Lesniak concluded that Mr. Smoot's withholding of the narrative portion of the report also violated a "Notice of Hearing Order dated September 20, 2001," issued by ALJ Leland, in which ALJ Leland ordered the parties to exchange all documentary evidence no later than twenty calendar days prior to the date of the hearing that had been set for January 25, 2002. ALJ Lesniak found this violation "to be a serious breach of trust."

not due to inadvertence or mistake.[27] Furthermore, insofar as we have found that the withheld portion of the report had evidentiary value,[28] we have little difficulty concluding that Mr. Smoot's conduct was deceitful, dishonest, a misrepresentation, and prejudicial to the administration of justice, and thus, amounted to a violation of Rules 8.4(c) and (d).

In reaching this conclusion, we find no merit in Mr. Smoot's argument that the portion of the report he tendered to the ALJ and Mr. Daugherty revealed that Dr. Zaldivar had diagnosed Mr. Daugherty with complicated pneumoconiosis. In this regard, Mr. Smoot points out that an ILO–UC form included in the version of the report he furnished to the ALJ and Mr. Daugherty included a notation of Dr. Zaldivar's finding of "Large Opacities Size A," which, according to Mr. Smoot, unequivocally diagnosed Mr. Daugherty as having complicated pneumoconiosis, and also contained a handwritten note by Dr. Zaldivar stating "[h]e has a combination of old TB and pneumoconiosis." Notably, both the finding of "Large Opacities Size A," and the difficult-to-read handwritten note, which referred only to pneumoconiosis without identifying the same as "complicated," were contained on a single page that was buried in the midst of a report that was more than twenty-five pages long. Furthermore, looking at the raw data gleaned from the examinations, and findings such as "Large Opacities Size A," would not immediately inform either the ALJ or Mr. Daugherty, an unrepresented claimant with no expertise in the area of black lung evaluations, of the conclusion that was plainly stated in the withheld narrative portion of Dr. Zaldivar's report.

Mr. Smoot contends that Dr. Zaldivar's narrative report, in and of itself, is insufficient to establish the irrebuttable presumption under 20 C.F.R. § 718.304(c), insofar as the preferred evidence is the ILO–UC form, which form was included in the materials he submitted to the ALJ and Mr. Daugherty. Accepting this representation as accurate does not change our conclusion that Mr. Smoot's act of withholding the narrative report was deceitful, dishonest, a misrepresentation, and prejudicial to the administration of justice. As noted above, the ILO–UC form was buried in the midst of a lengthy report, whereas the withheld narrative report, which was only five pages in length, set out the following conclusion in an obvious and easily found manner: "[r]adiographic evidence of emphysema, old tuberculosis, and simple *and complicated pneumoconiosis.*" (Emphasis added). Additionally, the end of the report contained the following conclusions:

1. There is evidence, in this case, of coal workers' pneumoconiosis, which he has acquired through his employment as a coal miner.

2. There is a severe pulmonary impairment present.

3. The pulmonary impairment present is sufficient to prevent him from performing any and all physical work.

4. The pulmonary disability, which he has and which prevents him from performing his usual work, or, for that matter, any physical activity, is the result of a combination of emphysema and coal workers' pneumoconiosis.

Thus, the withheld narrative portion of the report would have quickly placed the reader, including the ALJ, on notice of Dr. Zaldivar's conclusion that Mr. Daugherty suffered from complicated pneumoconiosis. Notably, "[j]udges, [including Administrative Law Judges], are not like pigs, hunting for truffles." *State v. Honaker*, 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994) (internal quotations and citations omitted).

Accordingly, we find the evidence was sufficient to prove that Mr. Smoot violated Rules 8.4(c) and (d) of the West Virginia Rules of Professional Conduct by removing

---

**27.** See note 21 *supra* for Mr. Smoot's explanation of why he determined to not provide the narrative portion of the report.

**28.** In this regard, we have observed herein that Dr. Zaldivar's narrative report included a diag-

nosis of complicated pneumoconiosis, which diagnosis, pursuant to 20 C.F.R. § 718.304, raises an irrebuttable presumption that Mr. Daugherty was totally disabled.

Dr. Zaldivar's narrative from the medical report provided to the ALJ and Mr. Daugherty.

### D. Sanctions

█ Because we have determined that Mr. Smoot has violated Rules 3.4, 8.4(c), and 8.4(d) of the West Virginia Rules of Professional Conduct, we must now determine the appropriate sanction. The ODC recommends that the following sanctions be imposed: (1) that Mr. Smoot's license to practice law be suspended for an unspecified length of time; (2) that he be required to complete nine hours of continuing legal education in ethics in addition to ethics hours he is otherwise required to complete to maintain his active license to practice law, with the additional nine hours to be completed in the current reporting period after Mr. Smoot is reinstated; and (3) that he be ordered to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

█ This Court has previously directed that,

[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Committee on Legal Ethics of West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). *See also Committee on Legal Ethics v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994) (recognizing that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice").

The specific analysis to be followed in determining an appropriate sanction is set out in the Rules of Professional Conduct. Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). We will examine each of these factors seriatim.

The first *Jordan* factor asks us to consider whether Mr. Smoot has violated a duty owed to a client, to the public, to the legal system, or to the profession. With respect to these duties, this Court has quoted favorably the HPS's observation in another disciplinary proceeding that:

[t]he public expects lawyers to exhibit the highest standards [of] integrity and honesty. Lawyers have a duty not to engage in conduct involving dishonesty, fraud, or interference with the administration of justice. Lawyers are officers of the court and must operate within the bounds of the law and act in a manner to maintain the integrity of the Bar.

*Lawyer Disciplinary Bd. v. Stanton*, 225 W.Va. 671, 678, 695 S.E.2d 901, 908 (2010). A lawyer's duties to the public, the legal system, and the profession are further reflected in the Rules of Professional Conduct, which establish a duty of candor to a tribunal (Rule 3.3), and a duty of fairness toward an opposing party (Rule 3.4). In this case, Mr. Smoot's deceptive action of altering a medical report by removing the physician's narrative conclusions prior to providing the same to the ALJ and an unrepresented opposing party fell far short of his duties as described above.

Next, we need not belabor our discussion of whether Mr. Smoot acted intentionally,

knowingly, or negligently, insofar as he has never denied withholding the narrative portion of Dr. Zaldivar's medical report. Thus, it is undisputed that his action was intentional.

Likewise, it is not necessary to engage in a lengthy analysis of the actual or potential injury caused by Mr. Smoot's misconduct. This is so because a finding of actual injury to the administrative tribunal and the opposing party is inherent in a violation of Rules 3.4, 8.4(c), and 8.4(d). That is to say, any time a lawyer engages in conduct that is unlawful, dishonest, deceitful, misrepresentative, and prejudicial to the administration of justice, injuries to the legal system and to the opposing party necessarily result.

 The final factor to be considered under *Jordan* is the existence of any aggravating or mitigating factors. This Court has explained that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003). Based upon the evidence presented in this action, we find numerous aggravating factors. Mr. Smoot possesses substantial experience in the practice of law, having practiced for twenty-nine years. It is apparent that he lacks remorse and has refused to acknowledge the wrongful nature of his conduct. The claimant who was deceived by Mr. Smoot's conduct was quite vulnerable. Mr. Daugherty was a seventy-four-year-old man with a limited education who was acting *pro se* at the time of Mr. Smoot's misconduct. We also find the seriousness of the conduct to be an aggravating factor. Submitting an altered report to a tribunal is an affront to justice that simply cannot be tolerated. Finally, notwithstanding the excuses that have been provided by Mr. Smoot to explain his conduct, we find the evidence is sufficient to establish that he acted with a dishonest and selfish motive by advancing the interests of his client above the integrity and fairness of the litigation process.

 Turning to the mitigating factors, this Court has explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Scott,* 213 W.Va. 209, 579 S.E.2d 550. Furthermore, we have elaborated that,

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *Scott, id.* In this case, the only mitigating factors asserted by Mr. Smoot are his good reputation and lack of a prior disciplinary record.[29]

Based upon our analysis of the evidence presented in this case in light of the factors set out in *Jordan,* we conclude that the sanctions requested by the ODC are appropriate. However, the ODC has failed to suggest the length of suspension that is suitable in this case. The deceptive conduct engaged in by Mr. Smoot, in essence, constituted an attempt to commit fraud upon an administrative tribunal. We have found numerous cases involving such an offense that have imposed a suspension of two-years or greater. *See In re Perrin,* 663 A.2d 517, 518 (D.C.1995) (imposing three-year suspension on lawyer for preparing and supervising preparation of private placement memoranda for real estate limited partnerships that contained misrepresentations and omitted material facts); *Iowa Supreme Court Bd. of Pro-*

---

**29.** Mr. Smoot also contends that his case is mitigated by the delay in disciplinary proceedings. However, insofar as we have found this case to be timely filed, we reject this factor.

*fessional Ethics & Conduct v. Clauss,* 530 N.W.2d 453 (Iowa 1995) (suspending license to practice law indefinitely, with no possibility of reinstatement for three years, where lawyer, who previously had been sanctioned, forged signature on return of service and notarized the same, provided false testimony under oath, and failed to report settlement agreements to court or client, among other offenses); *In re Budnick,* 67 A.D.3d 99, 886 N.Y.S.2d 700 (2009) (finding two-year suspension from the practice of law warranted for lawyer who knowingly filed false instrument with county clerk, even though there was no direct victim of misconduct, respondent's sole motivation appeared to have been to assist client in dire circumstances, lawyer had previously unblemished record, and lawyer had history of extensive pro bono work); *State ex rel. Oklahoma Bar Ass'n v. Askins,* 882 P.2d 1054 (Okla.1993) (imposing two-year suspension from practice of law for preparing and filing false documents with court); *State ex rel. Oklahoma Bar Ass'n v. Hensley,* 661 P.2d 527 (Okla.1983) (disbarring attorney for knowingly concealing facts from a court, misrepresenting facts to the court, and engaging in conduct which was prejudicial to the administration of justice); *In re Hawkins,* 305 Or. 319, 751 P.2d 780 (1988) (suspending lawyer from the practice of law for period of two years for preparing and filing false documents with court, using false evidence, and filing false affidavit).

In addition, while this Court has not previously addressed a lawyer disciplinary proceeding that is factually analogous to the case at bar, we have previously imposed a sanction of annulment or a two-year suspension for conduct that violated the Rules of Professional Conduct that are implicated in this action. *See Lawyer Disciplinary Bd. v. Stanton,* 225 W.Va. 671, 695 S.E.2d 901 (imposing annulment for violations of Rule 8.4(c) and Rule 8.4(d) of the West Virginia Rules of Professional Conduct for incident involving use of misrepresentation and dishonesty to gain access to incarcerated prisoner); *Lawyer Disciplinary Bd. v. Markins,* 222 W.Va. 160, 663 S.E.2d 614 (2008) (suspending law license for two years based upon repeated unauthorized access of another firm's e-mail accounts that violated, *inter alia,* Rule 8.4(c)). Based upon the foregoing cases, in light of the facts presented in this case, we find a one-year suspension is warranted.

## IV.

### CONCLUSION

For the reasons explained in the body of this opinion, we reject the recommendation of the HPS that the formal charges against Mr. Smoot be dismissed. Instead, we impose the following sanctions: (1) Mr. Smoot's license to practice law is suspended for a period of one year; (2) Prior to his reinstatement, Mr. Smoot must complete the mandatory twenty-four hours of continuing legal education required for the current reporting period, which includes three hours of ethics education, along with an additional nine hours of continuing legal education in ethics, and (3) Mr. Smoot is ordered to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

License to practice law in West Virginia suspended.

Justice WORKMAN, having been disqualified, did not participate in the decision of this case.

Judge Frank E. JOLLIFFE, sitting by temporary assignment.