**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

Fall 2024 Term

_____

No. 23-ICA-430

_____

FILED

**November 14, 2024**

**released at 3:00 p.m.**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

IN RE: EXPUNGEMENT OF RECORD OF N.B.

_____

Appeal from the Circuit Court of Cabell County

Honorable Alfred E. Ferguson, Judge

Civil Action No. 23-P-51

AFFIRMED

_____

Submitted: September 17, 2024

Filed: November 14, 2024

Devon T. Unger, Esq.
Melissa J. Giggenbach, Esq.
Phillip A. Raines (Rule 10 Student Attorney)[1]
Jerrick L. Allen (Rule 10 Student Attorney)
Sydney McGinnis (Rule 10 Student Attorney)
West Virginia Innocence Project
WVU College of Law Clinical Law Program
Morgantown, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Katherine Holly Franklin, Esq.
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.
CHIEF JUDGE THOMAS E. SCARR dissents and reserves the right to file a separate opinion.

---

[1] West Virginia University College of Law students Phillip A. Raines, Jerrick L. Allen, and Sydney McGinnis appear as counsel for Petitioner under Rule 10 of the West Virginia Rules for Admission to the Practice of Law.

GREEAR, JUDGE:

Petitioner, N.B.,[2] appeals the August 21, 2023, order of the Circuit Court of Cabell County denying his Petition for Expungement of Criminal Records Due to Dismissal. Based upon our review of the record and applicable law, we find that the circuit court did not abuse its discretion in denying N.B.'s petition for expungement. Accordingly, we affirm the circuit court's August 21, 2023, order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2002, the partially clad body of Deanna Louise Crawford, a twenty-one-year-old, was discovered by loggers in an abandoned barn-like structure located in a remote area of Hickory Ridge, Cabell County, West Virginia. Ms. Crawford's cause of death was determined to be manual strangulation and her autopsy revealed that she had numerous bruises and abrasions upon her body. Items of evidence were recovered by law enforcement from the area where Ms. Crawford's body was found, including beer cans, cigarette butts, and pants believed to have belonged to Ms. Crawford.[3]

---

[2] To protect the confidentiality of the individual involved in this case, we refer to Petitioner by the initials. *See, e.g.*, W. Va. R. App. P. 40(e). Consistent with our long - standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R., II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[3] The evidence recovered from the area where Ms. Crawford's body was found included possible DNA evidence on her pants, scrapings from her fingernails, an empty beer can, a Skoal snuff can, five cigarettes, and a glass mug.

1

Despite investigatory efforts by law enforcement, no immediate arrests were made in Ms. Crawford's case and the case investigation grew cold. It was not until January of 2007 that law enforcement received a break in its investigation. On January 11, 2007, the Cabell County Sheriff's Office received a call from a family member of Brian Dement, indicating that Mr. Dement had confessed to his involvement in Ms. Crawford's murder. This family member, who later surreptitiously recorded Mr. Dement's admissions, advised that Mr. Dement disclosed to multiple family members that he and three of his friends, including N.B., had murdered Ms. Crawford. Mr. Dement was subsequently questioned by law enforcement officers and, over the course of several days, provided three recorded statements regarding the facts surrounding Ms. Crawford's death. It is undisputed that Mr. Dement's three statements contained factual inconsistencies, with each statement providing new details and expounding upon Mr. Dement's involvement in the death of Ms. Crawford.[4]

During this same time frame, Mr. Dement's friend, J.B. (one of the three friends identified by Mr. Dement in his three recorded statements as being involved in Ms. Crawford's death), also provided a recorded statement to police. In his statement, J.B. disclosed that he was with the victim, Mr. Dement, P.B., and N.B., on the evening in

---

[4] As noted by the Supreme Court of Appeals of West Virginia ("SCAWV") in *State v. Black*, 227 W. Va. 297, 302, 708 S.E.2d 491, 496 (2010), "[w]hile [Mr.] Dement's statements contained conflicting versions of his own participation in the murder, his last statement admitted his hands-on involvement in the crime."

question and that he had driven the group from a party at his home to an abandoned building on Hickory Road. J.B. recalled that he stayed in the vehicle while the others "went to the area that became the crime scene." *State v. Black*, 227 W. Va. at 302, 708 S.E.2d at 496. J.B. stated that P.B. and N.B. returned to the car red-faced and the three of them left the scene, leaving the victim and Mr. Dement behind. *Id.*

The day following his statement to police, J.B. recanted his confession and averred that his confession was coerced.[5] Similarly, in October of 2007, in the several days after pleading guilty to the second-degree murder of Ms. Crawford, Mr. Dement also recanted his statements to police and averred, in a statement provided to N.B.'s private investigator, that he, N.B., J.B., and P.B. were innocent. However, despite recanting his statements to N.B.'s investigator, during the subsequent trials of J.B., N.B., and P.B. (N.B. and P.B. were tried together following the separate trial of J.B.), Mr. Dement testified, under oath, in accord with his original statements to police. Specifically, at the trial of N.B. and P.B., Mr. Dement testified as follows:

> Dement testified that in August of 2002, after he had worked all day, [N.B.] came by his house to invite him to a party at the home of [J.B.]'s mother. Dement walked with

---

[5] On appeal, the SCAWV determined that the trial court did not err in finding that J.B.'s statements to police were freely and voluntarily given and, thus, admissible as evidence at his criminal trial. As noted by the SCAWV, J.B. had been read his right under *Miranda v. Arizona*, 384 U.S. 436 (1966), and executed a form acknowledging his *Miranda* rights before his statement was provided. Further, J.B. acknowledged that he was not under arrest when his statement was given. In fact, at the conclusion of his statement, J.B. left the police station and was not arrested until several months later.

[N.B.] to this party. When Dement arrived at the party, there were approximately 10 or more people there, and he knew several of them. [P.B.] was not present when Dement first arrived at the party. The night's activities included drinking, talking[,] and playing video games in [J.B.']s bedroom.

At some point in the evening, [P.B.] and [J.B.] asked Dement if he wanted to go for a ride. Dement agreed and went to a dark-colored, four-door car. Dement testified that he got into the back seat and waited for the others to join him. After several minutes, [J.B.], [P.B. and N.B.], and the victim, Ms. Crawford, got into the car. Ms. Crawford was seated in the passenger seat of the car. [J.B.] was the driver. [P.B. and N.B.] and Dement were in the back seat of the vehicle. Dement testified that they traveled approximately two miles away from Route 10, talking, laughing[,] and smoking marijuana. Suddenly, [P.B.] struck Ms. Crawford, and [J.B.] stopped the car near what Dement described as an abandoned farm on the backside of Hickory Ridge. Dement was familiar with the location and described it as an "old party spot." The location was also near where Dement was residing with his stepfather.

After Ms. Crawford was struck by [P.B.], Dement stated that everyone decided "to get this b*itch" and he got out of the car and grabbed the victim by the neck. He stated that he "got out of the car, went to the passenger side and grabbed her out by her throat." When asked why he did this, Dement replied that "it was just a reaction." He then dragged her down into the woods, striking her along the way. Dement said he continued to drag her for some distance, laid her down[,] and left. Dement testified that [J.B., P.B., and N.B.] followed him, continuing to hit and kick Ms. Crawford. Dement stated that he then left the area, going back to the other side of the car, along the roadway where he claimed to have hidden in some weeds, because he did not want to participate any further in what the others were doing. While he was hiding in the vegetation, Dement heard the victim imploring and screaming at the assailants to stop, and later making moaning noises. Eventually the noises stopped and [J.B., P.B., and N.B] returned to the car and drove off, leaving Dement behind. Dement came out from his hiding spot and proceeded to go look for Ms. Crawford. The location of Ms. Crawford was not where he had last seen her, and he continued to a shed, where he found her on her back in a curled

4

position. He did not recall that she was not clothed at the time. Dement testified that he checked her neck for a pulse, and finding none, he left. He walked to Morrison's Market and called a cab to return to his home. He did not speak to [P.B., N.B., or J.B.] again that night.

*State v. Barnett*, 226 W. Va. 422, 426-27, 701 S.E.2d 460, 464-65 (2010).

Following the jury trial at which Mr. Dement testified, P.B. and N.B. were found guilty of the second-degree murder of Ms. Crawford.[6] P.B. and N.B. appealed their conviction, which was overturned by the SCAWV (based upon failure of the circuit court to allow admission of Mr. Dement's prior inconsistent statements to N.B.'s investigator) and N.B. and P.B. were granted a new trial. *See State v. Barnett*, 226 W. Va. at 433, 701 S.E.2d at 471.[7]

---

[6] In an earlier separate trial, J.B. was also found guilty of the second-degree murder of Ms. Crawford, based, in part, upon the sworn testimony of Mr. Dement. J.B.'s conviction was ultimately affirmed by the SCAWV in *State v. Black*, but later set aside based upon the newly discovered DNA evidence.

[7] The court in *State v. Barnett* did not allow for Mr. Dement to be cross-examined at trial based upon his inconsistent statements provided to N.B.'s investigator, which ultimately led to reversal of the conviction of N.B. However, in the underlying jury trial in *State v. Black*, Mr. Dement was permitted to be cross-examined at trial regarding his inconsistent statements provided to N.B.'s investigator and, despite the inconsistency of his statements, the jury nonetheless convicted J.B. for the second-degree murder of Ms. Crawford.

On January 18, 2011, N.B. accepted an *Alford*[8] plea to the voluntary manslaughter of Ms. Crawford. In 2015, counsel for N.B. filed a motion for post-conviction DNA testing pursuant to West Virginia Code § 15-2B-14 (2004), which was granted on November 1, 2016. Ultimately, the DNA profile on the items tested excluded Mr. Dement, N.B., J.B., and P.B., but showed the presence of the DNA of a convicted sex offender, Timothy Smith, on various samples found in the crotch area of the victim's discarded pants and a discarded cigarette butt. Given the newly discovered DNA evidence, N.B. was permitted to withdraw his *Alford* plea for the voluntary manslaughter of Ms. Crawford. Thereafter, during an October 5, 2021, hearing, Cabell County Special Prosecutor Thomas Plymale elected to dismiss all charges against N.B., J.B., and P.B.

Further, Prosecutor Plymale noted that if Timothy Smith were tried for the murder of Ms. Crawford that statements made by N.B., J.B., and P.B. to the parole board (describing in detail how the death of Deanna Crawford occurred and their participation in Ms. Crawford's death) would be admissible at Mr. Smith's trial, thus making it "impossible to proceed against Mr. Smith in any way."[9]   Prosecutor Plymale noted that in these

---

[8] *See North Carolina v. Alford*, 400 U.S. 25 (1970); *accord* Syl. Pt. 1, *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987) (holding that an accused may plead guilty and consent to imposition of a prison sentence "even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.").

[9] Mr. Smith was interviewed by law enforcement and denied his involvement in the death of Ms. Crawford. No charges have been filed against Mr. Smith relating to the death of Ms. Crawford.

statements to the parole board, N.B., J.B., and P.B. "placed – the only four persons there [at the scene of Ms. Crawford's murder] being the four persons that were charged [Mr. Dement, N.B., J.B., and P.B.], and that the only persons involved in her death to any extent were the four persons that were originally charged."

On February 10, 2023, N.B. filed a Petition for Expungement of Criminal Records Due to Dismissal, seeking expungement of his criminal records related to any charges brought against him associated with Ms. Crawford's death. N.B. argued that expungement was necessary as his "exoneration" through DNA evidence constituted "extraordinary circumstances" requiring the exercise of the circuit court's inherent expungement power. N.B. further argued that the presence of charges on his criminal record, for which he was "wrongfully convicted" and subsequently "exonerated" makes it difficult for him to find employment and housing and causes him "significant emotional distress." After consideration of N.B.'s petition for expungement, by order dated August 21, 2023, the circuit court denied the motion. It is from the August 21, 2023, order that N.B. now appeals.

## II.    STANDARD OF REVIEW

The SCAWV "reviews a circuit court's order granting or denying expungement of criminal records for an abuse of discretion." Syl. Pt. 1, *In re A.N.T.*, 238 W. Va. 701, 798 S.E.2d 623 (2017); *accord* Syl. Pt. 1, *In re: Perito*, 246 W. Va. 439, 874 S.E.2d 241 (2022). With this standard in mind, we now consider N.B.'s arguments.

7

## III.    DISCUSSION

On appeal, N.B. argues four assignments of error. First, N.B. alleges that the circuit court abused its discretion by ignoring material facts deserving significant weight and by improperly weighing certain factors. In his second assignment of error, N.B. contends that the circuit court abused its discretion by relying on improper factors that were not established in the record. Next, N.B. suggests that the circuit court erred by failing to apply settled law on the determination of "public policy." In his final assignment of error, N.B. contends that the circuit court infringed upon his due process rights in its denial of the petition for expungement. As N.B.'s assignments of error are interrelated with significant overlap, in that they each address the impropriety of the circuit court's ruling given the alleged "exoneration" of N.B. through DNA evidence, we will consolidate them and address them together.[10] *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

As noted by the SCAWV in *In re: Perito*,

"[t]here are two bases for judicial expungement of criminal records: statutory authority and *the inherent power of the courts*." *In re A.N.T.*, 238 W. Va. at 704, 798 S.E.2d at 626 (emphasis added). While expungement is largely "a creature of

---

[10] Each of the assignments of error advanced by N.B. on appeal is based on the same premise - N.B.'s belief that he was "wrongfully convicted" and that DNA evidence completely "exonerated" him (an argument disputed by the State). As he was "exonerated" and "wrongfully convicted," N.B. argues that it was an abuse of the circuit court's discretion, against the public policy of the State of West Virginia, and a violation of N.B.'s constitutional due process rights for the circuit court to deny his petition for expungement.

statute[,] this Court has recognized that the inherent powers of the Court may permit expungement as a remedy under certain circumstances." *Mullen v. Div. of Motor Vehicles*, 216 W. Va. 731, 733 n.2, 613 S.E.2d 98, 100 n.2 (2005).

246 W. Va. at 444, 874 S.E.2d at 246.

Further, the *Perito* Court, citing *State ex rel. Barrick v. Stone*, 201 W. Va. 569, 499 S.E.2d 298 (1997), recognized that a circuit court may grant an expungement in the absence of statutory authority where "extraordinary circumstances" exist. In *Stone*, the Court held, in part, at syllabus point one, that "[a] circuit court, absent extraordinary circumstances and to protect constitutional rights or some other compelling public policy imperative, does not in the absence of statutory authority have the power to order expungement of criminal history record information[.]" *Id.* at 569, 499 S.E.2d at 298, Syl. Pt. 1. Here, it is undisputed that no statutory authority exists in West Virginia to expunge the criminal records of N.B., absent the court's finding of extraordinary circumstances.[11]

---

[11] We acknowledge that West Virginia Code § 61-11-25 (2012) provides expungement power to circuit courts in limited circumstances (such as where petitioner has not been convicted of a prior felony). However, there is no dispute that N.B. did not seek expungement based upon this statute. In his petition for expungement, N.B. expressly acknowledges that he is "ineligible for expungement through West Virginia Code § 61-11-25 due to a previous felony [for malicious wounding] he obtained as a youthful offender in 2002." While the circuit court cites West Virginia Code § 61-11-25 in its order denying expungement, the court clearly bases its denial of N.B.'s underlying petition for expungement not upon failure to meet the requirements of West Virginia Code § 61-11-25, but upon the lack of any "extraordinary circumstances" requiring expungement.

As to making a determination of extraordinary circumstances permitting expungement, the SCAWV has noted that "[v]irtually every jurisdiction addressing this issue has held that expungement absent statutory authority is a 'narrow' remedy, which is 'reserved for the most unusual or extreme case.'" *In re: A.N.T.*, 238 W. Va. at 705, 798 S.E.2d at 627.[12] Here, the circuit court, who had extensive knowledge regarding the case history and underlying facts, found no extraordinary circumstances compelling expungement.

Specifically, in its August 21, 2023, order, the court noted its and the State's position that while N.B.'s DNA evidence was undisputedly not discovered at the location where Ms. Crawford's body was found, that finding is not tantamount to a complete exoneration of N.B. for any criminal wrongdoing associated with Ms. Crawford's death. Here, the charges against N.B., and subsequent jury verdict finding him guilty of second-degree murder, were not based upon DNA evidence, but were based upon the sworn statements of Mr. Dement.[13] Moreover, as noted by Prosecutor Plymale during the October

---

[12] *See, e.g., U.S. v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) ("[T]he power to expunge is 'a narrow one, … [and] should be reserved for the unusual or extreme case.'") (quoting *U.S. v. Linn*, 513 F.2d 925, 927 (10th Cir. 1975)); *U.S. v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991) ("[Expungement] is a narrow power, appropriately used only in extreme circumstances."); *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir. 1984) (finding that acquittee seeking expungement was not entitled to it absent "exceptional circumstances."); *U.S. v. McMains*, 540 F.2d 387, 390 (8th Cir. 1976) (providing that expungement "is not to be routinely used."); Trisha Zeller, 1 Handbook on West Virginia Criminal Procedure 7-36 (3d ed. 2016).

[13] There are arguments for and against the veracity of the recorded statements of Mr. Dement and J.B. related to N.B.'s involvement in the death of Ms. Crawford. While

5, 2021, hearing, and referenced by the SCAWV in its opinion in *Dement*, 245 W. Va. at 570, 859 S.E.2d at 738 (2021), over the course of the case proceedings, "[a]ccording to Mr. Dement, . . . [N.B.] . . . [has] admitted to some involvement in the murder of Ms. Crawford to the West Virginia Parole Board."

We must now determine if the circuit court's finding of no extraordinary circumstances was an abuse of discretion. "An appellate court should find an abuse of discretion only when the trial court has acted arbitrarily or irrationally." *State v. Beard*, 194 W. Va. 740, 748, 461 S.E.2d 486, 494 (1995). In *State v. Hedrick*, 204 W. Va. 547, 553, 514 S.E.2d 397, 403 (1999), the SCAWV discussed the review of matters under an abuse of discretion standard and stated

> we will not substitute our discretion for that of the trial court; rather, we will reverse only upon finding that the trial court abused its discretion. *See Bartles v. Hinkle*, 196 W. Va. 381, 389-90, 472 S.E.2d 827, 835-36 (1996) ("the question is not whether we would have imposed a more lenient penalty had we been the trial court, but whether the trial court abused its discretion in imposing the sanction." (citation omitted)). . . . we have previously explained that "[a] trial court abuses its discretion if its ruling is based on an erroneous assessment of the evidence or the law." *Id.* at 389, 472 S.E.2d at 835 (citation omitted). *See also*, *Gribben v. Kirk*, 195 W. Va. 488, 500, 466 S.E.2d 147, 159 (1995) ("Under the abuse of discretion standard, we will not disturb a circuit court's decision unless

Mr. Dement and J.B.'s incriminating statements were eventually recanted, there is evidence supporting the veracity of these statements, such as the fact that Mr. Dement's first confessions to family members were largely consistent with his initial confessions to law enforcement. *See Dement v. Pszczolkowski*, 245 W. Va. 564, 574-75, 859 S.E.2d 732, 742-43 (2021). *See also State v. Black*, 227 W. Va. 297, 708 S.E.2d 491.

11

the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances.") . . .

*Id.* at 402-03, 514 S.E.2d at 552-53.

Here, upon a review of the record, we cannot conclude that the circuit court abused its discretion in denying N.B.'s petition for expungement. The circuit court was in the best position to evaluate the petition in light of the complexity of the underlying case and its extensive procedural history. The circuit court based its ruling upon evidence contained within the record, including references to statements made by N.B. to the parole board confirming his involvement in the death of Ms. Crawford.[14] Simply because N.B. disagrees with the circuit court's analysis of the evidence does not necessitate a finding of abuse of discretion. While N.B. raises arguments regarding a violation of public policy and his due process rights in the denial of his petition for expungement because of his "exoneration," again, we find no error. The record reflects that N.B. was afforded due process throughout the underlying case and there is evidence within the record to support the charges levied against him.

---

[14] We disagree with N.B.'s assertion that the circuit court improperly considered statements made by N.B. to the parole board. N.B. argues that such statements were not properly considered as parole board proceedings are "inherently coercive." However, N.B. cites no law in support of his position. Thus, we find no error in the circuit court's consideration of N.B.'s statements made to the parole board. While the parole board records are admittedly not within the appendix record herein, there are several references to those records within the appendix record.

In his appeal, N.B. makes much ado about the fact that no hearing was held by the circuit court in its consideration of N.B.'s petition for expungement. However, he cites no statutory or other authority entitling him to such a hearing. As noted on page 56 of the Appendix, in communications with Judge Ferguson's office regarding N.B.'s petition for expungement, counsel for N.B. states "[i]n the event the judge would like a hearing …" Such a statement highlights that counsel did not anticipate a hearing on N.B.'s petition for expungement or demand the same.

Further, in his petition, N.B. argues that the circuit court "did not provide an opportunity for the parties to present all relevant information bearing on N.B.'s qualification for expungement of criminal records." Yet, during the oral argument of N.B.'s instant appeal, counsel for N.B. could not identify any fact, argument, or information that it would have presented to the circuit court during a hearing on the petition for expungement that the court was not already aware of, given Judge Ferguson's long time involvement in the case.[15] Accordingly, given that a hearing on N.B.'s petition was not necessary, we find no error in the fact that no such hearing was conducted.

---

[15] While Judge Ferguson was not the circuit court judge who presided over the jury trial of N.B., Judge Ferguson has been involved in the case since the post-conviction motion for DNA testing was filed by N.B. in 2015. As such, Judge Ferguson is well versed in the underlying facts of the case and its procedural history.

## IV. CONCLUSION

Based on the foregoing, we find that the circuit court did not abuse its discretion in denying N.B.'s petition for expungement and the court's August 21, 2023, order is affirmed.

Affirmed.